## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff ALOHA SPORTS INC. ("Plaintiff" or "ASI") respectfully moves this Court to bifurcate the trial, pursuant to Fed. R. Civ. P. 42(b), or in the alternative, to vacate the existing schedule and extend dates to accommodate discovery for a consolidated trial.

## I.

## INTRODUCTION

Federal Rule of Civil Procedure 42(b) provides in pertinent part:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue or of any number of claims . . . or issues . . . ."

As discussed below, a separate trial of this case will be more convenient, conducive to expedition, and will avoid prejudice. Accordingly, Plaintiff requests bifurcation of the trial, or in the alternative, Plaintiff requests that the existing schedule be vacated and extended to allow additional time to conduct discovery related to the antitrust portion of the case.

9999/255/423666

## II.

## STATEMENT OF FACTS

### A. Background of Relevant Facts

Plaintiff owned and operated the Aloha Bowl and Oahu Bowl, two post-season college football bowl games played on an annual basis in Hawaii. Plaintiff began to experience difficulties due, in large measure, to the NCAA requirement that all bowl operators pay each participating college football team the greater of a minimum payout of $750,000 or 75% of gross revenue. In short, the NCAA member institutions had agreed among themselves that for bowl operators to remain eligible for post-season college football bowl games, they had to pay out a minimum of $1.5 million ($750,000 per team) per bowl. Failure to comply with this "Minimum Guarantee" would result in penalties and possible decertification of the bowl.[1] This agreement among NCAA member institutions, which Plaintiff contends constituted horizontal price fixing, did not afford Plaintiff the opportunity

---

[1] It should also be noted that the 75% requirement also made it difficult to properly promote the bowl game. The amount of revenues required to recoup advertising or promotional expenses, given that 75% of the gross revenues would go back to the schools and colleges, severely limited the practical ability of Plaintiff to properly promote the bowl games.

to freely negotiate payouts to the teams based upon, among other things, quality, service, and the geographic desirability of playing in Hawaii.[2]

By the late 1990's, Plaintiff recognized that it could not meet the $1.5 million Minimum Guarantee requirement. Plaintiff, in an effort to comply with the stringent NCAA requirements, relocated the two bowls to the mainland.

The Oahu Bowl was relocated to Seattle and renamed the Seattle Bowl. Plaintiff successfully hosted two bowl games in Seattle in 2001 and 2002. The modest success of the Seattle Bowl attracted a third party, Pro Sports Entertainment, Inc. ("Pro Sports"), to enter into an agreement with Plaintiff to purchase the bowl for a total package worth more than $2 million. The only contingency on the deal was certification of the bowl for the 2003-2004 season by the NCAA. With knowledge of the pending deal between Plaintiff and Pro Sports, and in violation of the terms and conditions of the contractual agreement between Plaintiff and the NCAA, the NCAA decertified the Seattle Bowl. Due to this improper decertification, Plaintiff's agreement with Pro Sports was disrupted and terminated and Plaintiff was effectively put out of business.

---

[2] Apparently recognizing its illegality, the NCAA eliminated the Minimum Guarantee beginning in the 2003-2004 season. Nevertheless, the subsequent repudiation of the NCAA's price fixing agreement does not alter the fact that it led to the demise of Plaintiff's business.

The NCAA approved relocation of the Aloha Bowl to San Francisco, and certified the San Francisco Bowl for 2001. However – again in violation of NCAA rules and regulations – the NCAA withdrew certification of the San Francisco Bowl before the game was played. Plaintiff made plans to bring the Aloha Bowl back to Hawaii in 2002 but the NCAA, violating its own rules and regulations, rejected Plaintiff's application and instead certified a new ESPN-owned Hawaii Bowl that continues to be played today.

### B.   Statement of Claims and Defenses

The First Amended Complaint alleges four causes of action against the NCAA: (1) illegal restraint of trade under federal antitrust law (Sherman Act § 1); (2) violation of Hawaii unfair trade practices law; (3) breach of contract; (4) intentional interference with contract and/or prospective economic advantage.

#### 1.   Federal Antitrust and Hawaii Unfair Trade Practices Claims

Plaintiff contends that the agreement to fix minimum prices on payments to college football teams constitutes horizontal price fixing under Section 1 of the Sherman Act (15 U.S.C. § 1) and Sections 480-2 and 480-4(a) and (b) of the Hawaii Revised Statutes.

2.  Breach of Contract (Seattle Bowl)

This claim encompasses the NCAA's decision to decertify the Seattle Bowl in violation of the terms and conditions of the contractual relationship between the NCAA and Plaintiff as set forth in the Postseason Football Handbook ("the Handbook"). As delineated in the "Penalties and Failure to Comply with Requirements" section of the Handbook, even assuming some alleged violation by Plaintiff of an NCAA regulation, the NCAA was only entitled to withhold certification for one year or fine Plaintiff a fixed percentage of gross receipts. The NCAA was not empowered to decertify the Seattle Bowl and when it did so in May 2003, it breached the terms and conditions of the Handbook.

This is a straightforward claim for breach of contract with consequential damages flowing from the disruption of the Pro Sports deal. To date, counsel for the NCAA have not commented on this claim.

3.  Breach of Contract (Aloha Bowl)

This breach of contract claim flows from the NCAA's refusal to recertify the Aloha Bowl which was to be played in Hawaii in 2002. After the San Francisco Bowl failed to get off the ground, the NCAA advised Plaintiff that it would withdraw certification for the bowl for one year only. Plaintiff was advised and understood that if it applied for recertification the following year it would receive priority consideration pursuant to the terms and conditions of the Handbook. In

fact, however, the NCAA rejected Plaintiff's application for recertification, lifted an existing moratorium on new bowls, waived its own requirement of a one-year waiting period for new bowl applicants, and awarded initial certification of the Hawaii Bowl to ESPN.

                4. <u>Interference with Contract and/or Prospective Economic Advantage</u>

The tort claims arise out of the NCAA's wrongful disruption of the 2003 agreement between Plaintiff and Pro Sports. The NCAA had knowledge of the agreement and yet chose to decertify the Seattle Bowl in violation of NCAA rules and regulations governing certification. NCAA rules provided that the maximum penalties for violation of NCAA policies or procedures are to withhold certification for one year or to impose a fine of a fixed percentage of gross receipts. In violation of its own rules, the NCAA decertified the Seattle Bowl. Having done so, Plaintiff's agreement with Pro Sports was irrevocably disrupted and terminated.

### C.     <u>Summary of the Proceedings to Date</u>

The parties have exchanged written discovery, including thousands of pages of documents, and taken several depositions. In October 2005, the parties engaged in settlement discussions under the auspices of this Court. Although no settlement was reached, what evolved from the settlement discussions was the suggestion that the parties might simplify matters by prioritizing the simpler tort claim (and related contract claim) involving the Seattle Bowl and proceed forward with discovery

limited to the Seattle Bowl. It was further discussed that after the depositions of a few key witnesses were taken, the parties would either revisit settlement or the NCAA would move for summary judgment on claims relating to the Seattle Bowl. The antitrust portion of the case would be left for later discovery and trial if necessary.

Although the NCAA never formally "agreed" to the suggestion that discovery proceed only on the Seattle Bowl claims, Plaintiff effectively began implementing this plan by focusing discovery on the Seattle Bowl claims, with the understanding that this Court would have to approve any formal bifurcation of the claims. Indeed, Plaintiff now views its case as centering on two main and separable theories: (1) illegal price fixing by the NCAA (antitrust claim), and (2) the NCAA's wrongful disruption of the sale of ASI to Pro Sports (tort and contract claims).

### III.

### ARGUMENT

Plaintiff now requests that the informal plan to prioritize the Seattle Bowl claims be formally recognized and endorsed by this Court. While there is some overlap between the tort and antitrust claims, they are separable. Prioritizing the Seattle Bowl tort claims will simplify and shorten discovery and trial, and

substantially reduce the costs of litigation. Bifurcation will eliminate the need for economist experts to define markets and market power and save both parties the costs and time required for preparation of expert reports. Additionally, Plaintiff estimates that to prepare the antitrust case it will need several months to take depositions across the country of various athletic directors, members of NCAA football committees, and NCAA officials in Indiana. The need for such depositions may be eliminated under a bifurcated trial. Finally, a trial of the much simpler and straightforward Seattle Bowl tort and contract claims may allow the parties to resolve this matter in its entirety.

In short, a separate trial is supported by the factors set forth in Fed. R. Civ. P. 42(b). First, a separate trial is in furtherance of convenience because it would simplify and shorten and reduce costs for discovery and trial. Second, bifurcation will avoid prejudice to the parties. As a result of the settlement conference with Judge Chang, Plaintiff undertook to prioritize the Seattle Bowl claims and limit discovery to issues related to those claims. The existing schedule does not allow Plaintiff sufficient time to conduct discovery for a consolidated trial and Plaintiff would suffer prejudice if bifurcation is not granted or, alternatively, the schedule is not extended. Third, a separate trial is conducive to expedition and economy because discovery and trial can be completed far more quickly than the case as a whole.

If, however, the Court does not grant Plaintiff's request to bifurcate the trial, Plaintiff respectfully requests that the existing schedule be vacated and extended to allow the parties additional time to conduct discovery for a consolidated trial.

## IV.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests bifurcation of the trial so that the parties can focus on the Seattle Bowl claims, and leave the antitrust claim for later discovery and trial if necessary. Alternatively, if Plaintiff's request for bifurcation is not granted, Plaintiff requests that the existing schedule be vacated and extended to allow the parties additional time to conduct discovery for a consolidated trial.

DATED: Honolulu, Hawaii; March 31, 2006

> BLECHER & COLLINS, P.C.
> MAXWELL M. BLECHER
> DAVID W. KESSELMAN
> COURTNEY A. PALKO
>
> FREDERICK W. ROHLFING III
> A LIMITED LIABILITY LAW CORPORATION
>
> _____
> FREDERICK W. ROHLFING III
>
> Attorneys for Plaintiff Aloha Sports Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA SPORTS INC., a Hawaii corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | CIVIL NO. CV04-00204 DAE/KSC (Antitrust)<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was duly served upon the following persons by way of mailing a copy, to their last known address on the date of filing:

>WILLIAM C. McCORRISTON, ESQ.
>KENNETH J. MANSFIELD, ESQ.
>McCORRISTON MILLER MUKAI MacKINNON LLP
>Five Waterfront Plaza, 4th Floor
>500 Ala Moana Boulevard
>Honolulu, Hawaii 96803
>
>Attorneys for Defendant
>THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION
>
>and

9999/255/423666

GREGORY L. CURTNER, ESQ.
ROBERT J. WIERENGA, ESQ.
ATLEEN KAUR, ESQ.
MILLER CANNFIELD PADDOCK AND STONE, PLC
101 N. Main Street, 7th Floor
Ann Arbor, MI 48104

Attorneys for Defendant
THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION


DATED: Honolulu, Hawaii; March 31, 2006

        BLECHER & COLLINS, P.C.
        MAXWELL M. BLECHER
        DAVID W. KESSELMAN
        COURTNEY A. PALKO

        FREDERICK W. ROHLFING III
        A LIMITED LIABILITY LAW CORPORATION

        _____
        FREDERICK W. ROHLFING III

Attorneys for Plaintiff Aloha Sports Inc.