ORIGINAL
cv KSC

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 12 2006

at 3 o'clock and 30 min. P.M.
SUE BEITIA, CLERK

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (Pro Hac Vice)
DAVID W. KESSELMAN (Pro Hac Vice)
COURTNEY A. PALKO (Pro Hac Vice)
mblecher@blechercollins.com; dkesselman@blechercollins.com;
cpalko@blechercollins.com
515 South Figueroa Street, 17th Floor
Los Angeles, California 90071
Telephone: (213) 622-4222; Facsimile: (213) 622-1656

FREDERICK W. ROHLFING III, A LIMITED LIABILITY LAW COMPANY
FREDERICK W. ROHLFING III    #3474
FWR@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813-3283
Telephone: (808) 547-5400; Facsimile: (808) 523-1888

Attorneys for Plaintiff Aloha Sports Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA SPORTS INC., a Hawaii corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | CIVIL NO. CV04-00204 DAE/KSC (Antitrust)<br><br>PLAINTIFF ALOHA SPORTS INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SEPARATE TRIAL UNDER FRCP 42(b) OR, IN THE ALTERNATIVE, TO EXTEND SCHEDULING; DECLARATION OF MAXWELL M. BLECHER; EXHIBITS A-E; CERTIFICATE OF SERVICE<br><br>Hearing Date: May 18, 2006<br>Time: 2:30 p.m.<br>Judge: Hon. Kevin S.C. Chang |

9999/566/426955

PLAINTIFF ALOHA SPORTS INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SEPARATE TRIAL UNDER
FRCP 42(b) OR, IN THE ALTERNATIVE, TO EXTEND SCHEDULING

## INTRODUCTION

Plaintiff ALOHA SPORTS INC. ("Plaintiff" or "ASI") respectfully submits this reply memorandum in support of its motion to bifurcate the trial, pursuant to Fed. R. Civ. P. 42(b), or in the alternative, to vacate the existing schedule and extend dates to accommodate discovery for a consolidated trial. Bifurcation and prioritization of the tort (intentional interference) and contract claims involving the Seattle Bowl game and the contract claim involving the Aloha Bowl game would simplify the case and substantially reduce the costs of litigation and may allow the parties to resolve the case in its entirety without litigating the more costly, protracted antitrust claim.

## ARGUMENT

**I.    ASI's Breach of Contract Claim Relating to Improper Decertification of the Aloha Bowl Should Be Tried with the Tort and Contract Claims Relating to the Seattle Bowl.**

First, ASI would like to clarify an erroneous claim made by the NCAA. The NCAA's suggestion that ASI is "apparently abandoning its breach of contract claim with respect to the Aloha Bowl" (see NCAA Motion, at 2 fn. 2) is simply incorrect. ASI is not abandoning its claim relating to the Aloha Bowl. ASI's claim is based on the NCAA's refusal to recertify the Aloha Bowl for the 2002 season

when ASI had complied with all NCAA requirements for recertification, having held the game in Honolulu in 2000 in compliance with NCAA guidelines, having paid the teams in full, and having had certification for 2001 improperly withdrawn together with a written promise to treat ASI as a recertifying bowl for the 2002 year, was a breach of the NCAA's contractual obligation to recertify the Aloha Bowl. This claim should be tried along with the Seattle Bowl claims. Alternatively, the Aloha Bowl claim may be tried together with the antitrust claim if the Court finds that those claims are better suited to be tried together. Either option is acceptable to Plaintiff.

## II.   Bifurcation Will Eliminate the Requirement for Expert Disclosure and Reports at This Time.

Plaintiff does not intend to rely on experts for any claim other than the antitrust claim. If the court allows bifurcation, the tort and breach of contract damages are plain and the jury can make this determination without the assistance of any expert. Nor is an expert required to enlighten the jury about any liability issues. In fact, any expert opinion might encroach on ultimate issues to be determined by the jury. Given that the tort and contract claims are quite simple and straightforward, an expert report is neither necessary nor proper.

On the other hand, experts are necessary for the antitrust claim. While it is true that Plaintiff did not submit an expert disclosure and report by the scheduled deadline of April 3, 2006, Plaintiff did so with the anticipation and expectation,

based on the settlement conference and the Court's suggestion that the tort claim be prioritized, that the NCAA would be agreeable. In an effort to minimize costs, simplify the litigation, and promote a speedy resolution of this case, Plaintiff has prioritized the tort claim. Plaintiff is prepared to try the tort claim in accordance with the existing schedule or a schedule which envisions no significant delay.

### III.   Plaintiff Has Been Conducting Discovery to Support Its Tort and Contract Claims.

Mr. Feller is the key witness for ASI's tort claim and his deposition has now been completed. The NCAA's statement that "on at least two occasions ASI has failed to properly serve Mr. Feller with a deposition subpoena and has not yet taken his deposition" (NCAA Motion at 8) is misleading and incomplete. Since the settlement conference, ASI has been actively working to contact Mr. Feller – informally by telephone, by letter to several different addresses, and by email; then formally with service of process using an attorney's service; and finally ASI hired a private investigator to locate and serve him. While it is true that Plaintiff was unsuccessful in its first two attempts to serve Mr. Feller, it should be noted that the NCAA was unwilling to provide ASI with Mr. Feller's contact information despite ASI's request for it after it was known that the NCAA had been in contact with Mr. Feller regarding this case. (See Blecher Decl. Exhs. A, B.) Finally, Plaintiff scheduled Mr. Feller's deposition for April 19 but changed the date at the NCAA's

request to accommodate NCAA counsel's schedule. (See id. Exh. C.) The NCAA's suggestion that ASI has not been diligent in pursuing its claims is untrue.

## IV. Bifurcation is Convenient, Non-Prejudicial, and Conducive to Expedition and Economy.

While counsel for the NCAA never formally agreed to bifurcation of the claims, it similarly never expressed any objection to Plaintiff or complained of any prejudice. Soon after the settlement conference, Plaintiff communicated to defense counsel its intent to proceed in this manner. (Blecher Decl. ¶ 3.) Defense counsel did not object. Again, on March 9, 2006, Plaintiff formally requested that the NCAA stipulate to a bifurcated trial. (See id. Exh. D.) Defense counsel did not respond until March 22, 2006 that Defendant would not stipulate to bifurcation. (See id. Exh. E.)

Plaintiff did not expect that this motion would be opposed so vigorously because it is both fair and reasonable and may substantially reduce the costs of litigation and achieve a prompt resolution of the entire case. Nor will bifurcation prejudice Defendant in any way. Rather, bifurcation promotes the interests of the Court and both parties by reducing the time, expenses and issues involved in litigating the first trial. It is quite likely that a disposition of the first trial will eliminate the need to try the remaining antitrust claim.

Contrary to the NCAA's assertion that there is "little remaining discovery," a large number of depositions including costly expert depositions and reports are

required for the antitrust claim. None of the discovery propounded by the Defendants will be wasted. Depositions taken by the NCAA thus far have been limited to ASI's officers and its accountant; these depositions may be used in both trials.

The risk of jury confusion is lessened – not greater – "if the issues are separated." (See NCAA Motion at 4.) As the NCAA is well aware, antitrust cases add levels of complexity and jury confusion that are not a part of breach of contract and tort claims. For the antitrust trial, the jury will need to be educated on the Sherman Act, relevant market, and the rule of reason and quick look analysis. Additionally, there is no overlap in evidence as to liability. Nothing ASI did or did not do in managing the bowl games justifies price-fixing. Similarly, the evidence on damages is distinct. For the tort claim, the damages are the amount that a third party (Pro Sports & Entertainment, Inc.) was prepared to pay to acquire the Seattle Bowl. For the antitrust claim, damages are based on the money that ASI could have saved in a but-for, free market world by negotiating with conferences or teams individually without the restriction of the unlawful minimum guarantee.

In short, bifurcation is convenient because it allows the simplest, most straightforward case to be tried before a jury, while avoiding the complex, substantially more expensive and time-consuming trial on the antitrust claim.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests bifurcation of the trial so that the parties can focus on the tort and contract claims, and leave the antitrust claim for later discovery and trial if necessary. Alternatively, if Plaintiff's request for bifurcation is not granted, Plaintiff requests that the existing schedule be vacated and extended to allow the parties additional time to conduct discovery for a consolidated trial.

DATED: Honolulu, Hawaii; May 12, 2006

>BLECHER & COLLINS, P.C.
>MAXWELL M. BLECHER
>DAVID W. KESSELMAN
>COURTNEY A. PALKO
>
>FREDERICK W. ROHLFING III, A LIMITED
>LIABILITY LAW COMPANY
>
>_/s/ Frederick W. Rohlfing III_
>FREDERICK W. ROHLFING III
>Attorneys for Plaintiff Aloha Sports Inc.