McCORRISTON MILLER MUKAI MacKINNON LLP
WILLIAM C. McCORRISTON        #995
KENNETH J. MANSFIELD          #7227
mccorriston@m4law.com; mansfield@m4law.com
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone: (808) 529-7300
Facsimile: (808) 524-8293

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
GREGORY L. CURTNER *(pro hac vice)*
ROBERT J. WIERENGA *(pro hac vice)*
ATLEEN KAUR *(pro hac vice)*
curtner@millercanfield.com; wierenga@millercanfield.com
kaur@millercanfield.com
101 North Main Street, 7th Floor
Ann Arbor, MI 48104-1400
Telephone: (734) 663-2445
Facsimile: (734) 663-8624

Attorneys for Defendant
THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA SPORTS INC., a Hawaii corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>          Defendant. | Civil No.: 04-000204 DAE/KSC<br><br>DEFENDANT NCAA'S CONCISE STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; DECLARATION OF DENNIS L. POPPE; EXHIBITS "1" – "34"; DECLARATION OF KEITH MARTIN; EXHIBITS "35" – "44'; DECLARATION OF ANGELA GRANT; EXHIBITS "45" – "52"; DECLARATION OF ATLEEN |

140316.1



) KAUR; EXHIBITS "53" – "54";
) DECLARATION OF KENNETH J.
) MANSFIELD; EXHIBITS "55" –
) "95"; CERTIFICATE OF SERVICE
)
)
)
) Trial Date: October 3, 2006
)
)
)
)
)
)

DEFENDANT NCAA'S CONCISE STATEMENT OF
MATERIAL UNDISPUTED FACTS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

The NCAA respectfully submits this concise statement of material undisputed facts in support of its Motion for Summary Judgment:

|   | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
|   | **ASI's Violations of NCAA Rules and Business Mismanagement** |   |
| 1. | Postseason competition in Division IA football takes place in Bowl Games run by promoters under NCAA rules. The NCAA ensures adherence to its principles by certifying Bowl Games based on promoters' applications and their prior track records. | Poppe Decl ¶¶14-17, 20; First Amended Complaint ("Complaint") ¶¶8, 9; Exs. 1-6, 8-13, 45-47.[1] |

---

[1] Exhibits 1-34 are authenticated by the Poppe declaration; Exhibits 35-44 are authenticated by the Martin declaration; Exhibits 45-52 are authenticated by the Grant declaration; Exhibits 53-54 are authenticated by the Kaur declaration; Exhibits 55-68 are authenticated by the Mansfield declaration; and Exhibits 69-95 are authenticated by ASI's Responses to the NCAA's Requests for Admissions.

| | | |
|---|---|---|
| 2. | Bowl Game certification is awarded annually. If the Bowl Game is not played in that year, its certification lapses. | Poppe Decl ¶¶18-19; Ex. 55, Daw dep. at 184:8-15; Exs. 1-6, 8-13. |
| 3. | Aloha Sports Inc. ("ASI") promoted the Aloha Bowl (1982-2000) and the Oahu Bowl (1998-2000). In 2001, under new ownership, ASI moved its Bowl Games to the mainland hoping to increase profits by attracting better teams and drawing larger audiences. ASI's payments to teams for 1999-2001 Bowl Games had been made by June 28, 2002. | Complaint ¶¶4, 12, 15, 16; Poppe Decl ¶¶23-25; Ex. 55, Daw dep. at 19:8-22; Ex. 57, Haugh dep. at 109:13-111:9; Exs. 37, 69-79. |
| 4. | In 2001 the NCAA allowed ASI to move the Aloha Bowl to San Francisco and the Oahu Bowl to Seattle. The Seattle Bowl was played in 2001 and 2002. Due to ASI's failure to meet various certification standards, the NCAA withdrew certification for the 2001 San Francisco Bowl. | Complaint ¶¶16, 17, 18, 37; Poppe Decl ¶¶26, 27, 29; Ex. 55, Daw dep. at 87:19-23, 130:16-20, 207:9-210:7, 218:9-21; Exs. 21, 22. |
| 5. | The 2001-2002 Division I Manual and Postseason Football Handbook ("Handbook") governed the 2002 Seattle Bowl. The 2002-2003 Manual and Handbook governed the proposed 2003 Seattle Bowl. If a promoter fails to meet these requirements, the NCAA may withhold certification of the Bowl Game or fine it a percentage of its gross profits. The NCAA has approved transfers of ownership of a Bowl that is in compliance with NCAA regulations. | Complaint ¶¶10, 18; Poppe Decl ¶37; Ex. 55, Daw dep. at 47:10-20, 49:11-50:4; Ex. 57, Haugh dep. at 61:25-62:22, 75:4-20; Exs. 1-6, 8-13, 45-47. Ex. 59, Feller dep. at 33:9-34:3. |
| 6. | The NCAA denied certification to ASI's proposed 2003 Seattle Bowl as announced in a May 1, 2003 press release, specifying that the denial was for 2003-2004 because of ASI's violations of NCAA regulations and financial mismanagement. ASI missed the deadlines for payment of the certification fee and obtaining a Letter of Credit ("LOC") for the 2002 Seattle | Ex. 33; Poppe Decl ¶¶30, 32-38; Ex. 56, Rohlfing dep. at 65:5-67:12; Ex. 55, Daw dep. at 165:6-19, 186:18-188:11, 264:6-15; Ex. 57, Haugh dep. at 12:18-24, 74:7-75:20, 103:4-21; Ex. 59, Feller dep at 20:11-23, |

|   | | |
|---|---|---|
|   | Bowl. Mr. Daw did not attend the NCAA's certification meeting. Although the NCAA inquired whether ASI would consider taking one year off, ASI has not applied for certification since 2003. | 29:8-14. |
| 7. | ASI has at least seven outstanding Judgments against it in various courts for unpaid debts. | Ex. 55, Daw dep. at 24:14-25:7, 158:2-159:20, 198:8-199:2; Exs. 60-66. |
| 8. | As of April 2003, ASI had not paid the Atlantic Coast Conference or University of Oregon for participation in the 2002 Seattle Bowl. ASI still owes these institutions and other creditors. | Ex. 57, Haugh dep. at 80:12-17, 82:3-6; Exs. 43 and 44; Ex. 59, Feller dep at 22: 19-22, 24:4-8, 32:16-21; Ex. 58, R. Banner dep. at 47:4-17 |
| 9. | In 2002 the NCAA twice extended its deadline for an LOC to ASI, which was received only 2 weeks prior to the game. ASI concedes that the NCAA extended it repeated allowances. | Ex. 56, Rohlfing dep. at 84:5-7, 85:1-9; Ex. 57, Haugh dep. at 33:3-10, 41:20-42:9, 60:18-61:18, 81:6-18; Poppe Decl ¶34; Exs. 38, 40, 41, 42. |
| 10. | ASI soured its relationship with the Seattle Chamber of Commerce and lost support of the local community. | Ex. 57, Haugh dep at 52:22-56:12, 91:4-95:25; Ex. 59, Feller dep at 84:6-85:8; Exs. 80, 34. |
| 11. | ASI did not have a title sponsor for the 2002 or 2003 Seattle Bowl. | Ex. 60, Haugh dep at 50:21-22, 51:12-18; Ex. 55, Daw dep at 240:24-241:10; Ex. 81. |
| **The Postseason Reimbursement Rule** | | |
| 12. | The NCAA's Handbooks for 2000-01 to 2002-03 contain a rule requiring reimbursement by Bowl promoters to participating schools. | Poppe Decl ¶25; Exs. 1-6, 8-13. |

4

| 13. | ASI entered into contracts with conferences and institutions participating in its events independent of NCAA regulations. | Ex. 55 Daw dep. at 52:6-17; Poppe Decl ¶31; Exs. 82-85. |
|---|---|---|
| 14. | In 2002 ASI agreed to reimburse participating teams $1 million each, an amount greater than the NCAA's requirement of $750,000. | Ex. 55, Daw dep. at 37:17-38:4; Poppe Decl ¶31; Exs. 82-85. |
| 15. | ASI required participating institutions and fans to stay at particular hotels in exchange for rebates from the hotels. Teams were also required to bring their pep bands. | Ex. 55, Daw dep. at 176:7-177:19; Ex. 57, Haugh dep. at 91:17-92:17; Exs. 84-87. |
| 16. | ASI required participating institutions to purchase a minimum number of tickets for the game. ASI deducted the price of these tickets from its reimbursement to participating institutions regardless of whether the teams could sell the tickets. Institutions participating in the 2002 Seattle Bowl agreed to purchase tickets for $662,500 each, to be offset against the $1 million ASI had contracted to pay them. | Ex. 55, Daw dep. at 60:1-24, 141:6-20; Poppe Decl ¶31; Exs. 82-85. |
| 17. | The postseason reimbursement rule permitted closed bowl games to seek a waiver. ASI has never sought or inquired about a waiver from any NCAA regulation. | Ex. 55, Daw dep. at 40:14-21, 50:5-51:16, 54:5-22; Poppe Decl ¶¶39-40; Exs. 35-36. |
| **ASI's Problems with Outside Parties** | | |
| 18. | Jeep Eagle was the longtime title sponsor of the Aloha and Oahu Bowls. But, Jeep withdrew its title sponsorship when ASI moved its Games to the mainland and held them on a different day than Christmas day. | Ex. 56, Rohlfing dep. at 135:17-24; Ex. 55, Daw dep. at 95:19-96:23; Exs. 88-90. |
| 19. | The Aloha and Oahu Bowls were televised by ABC and ESPN respectively. ABC required ASI to hold the Aloha Bowl on Christmas mornings. | Complaint ¶¶14, 15; Ex. 55, Daw dep. at 86:8-87:18; Ex. 57, Haugh dep. at 110:2- |

5

|   | ASI had trouble selling tickets to local fans on Christmas morning. | 111:9; Exs. 91-93. |
|---|---|---|
| 20. | The participation of the University of Hawaii ("UH") was key to ASI's success. In 1984, 1986, 1988 and 1990, UH had winning seasons, but was not invited to participate in the Aloha Bowl for reasons unrelated to NCAA rules. | Complaint ¶14; Ex. 55, Daw dep. at 78:8-14, 132:7-10; Exs. 48-51; Ex. 94. |
| 21. | When ASI could not organize the Aloha Bowl in San Francisco, it sought to return the Bowl to Hawaii but it did not have an agreement with a stadium, conference commitments, TV broadcaster or title sponsor. ESPN also filed an application for a Hawaii Bowl. ESPN had conference commitments, sponsors and was going to broadcast the game on its own network. | Ex. 55, Daw dep. at 79:1-13, 241:1-242:7, 247:23-248:23; Poppe Decl ¶28; Ex. 81. |
| **ASI's Admissions** | | |
| 22. | ASI did not plead a relevant market in its complaint. | Complaint; Exs. 53-54. |
| 23. | When seeking sponsors and selling tickets, ASI's bowl games competed with a myriad of entertainment events. | Ex. 55, Daw dep. at 30:3-31:10, 34:1-35:20; Poppe Decl ¶21. |
| 24. | Paul Feller of Pro Sports & Entertainment ("PSEI") did not sign and ASI did not receive a signed copy of a final contract for PSEI's purchase of ASI. The unsigned letter of intent contained three conditions-precedent to the finalizing of the contract, including certification of the proposed 2003 Seattle Bowl, negotiated independent of the NCAA's involvement. PSEI had not operated its Freedom Bowl for many years. | Exs. 59, 95; Ex. 56, Rohlfing dep. at 27:25-30:12; Ex. 55, Daw dep. at 258:13-259:15; Ex. 57, Haugh dep. at 75:21-76:21; Ex. 59, Feller dep. at 32:10-15, 73:3--75:9, 86:7-22. |

6

| | | |
|---|---|---|
| 25. | The number of bowl games has increased from 18 in 1991-92 to 28 in 2003-04. | Complaint ¶13; Poppe Decl ¶22. |
| 26. | The NCAA's postseason reimbursement rule did not constrain ASI because ASI could require teams to purchase a certain number of tickets at prices set by ASI. | Ex. 55, Daw dep at 59:11-25; Poppe Decl ¶25. |
| 27. | The NCAA has the authority to oversee operation of Bowl Games. | Complaint ¶5. |
| 28. | The antitrust claims should be adjudicated under the rule of reason. | Exs. 53-54. |
| 29. | ASI's only written evidence of its alleged contract with the NCAA is comprised of NCAA Manuals and Handbooks. | Exs. 53-54, Ex. 67 (Interrogatory #4). |

DATED: Honolulu, Hawaii, June 14, 2006.

_____
WILLIAM C. McCORRISTON
KENNETH J. MANSFIELD
GREGORY L. CURTNER (*pro hac vice*)
ROBERT J. WIERENGA (*pro hac vice*)
ATLEEN KAUR (*pro hac vice*)

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION

| | | |
|---|---|---|
| 25. | The number of bowl games has increased from 18 in 1991-92 to 28 in 2003-04. | Complaint ¶13; Poppe Decl ¶22. |
| 26. | The NCAA's postseason reimbursement rule did not constrain ASI because ASI could require teams to purchase a certain number of tickets at prices set by ASI. | Ex. 55, Daw dep at 59:11-25; Poppe Decl ¶25. |
| 27. | The NCAA has the authority to oversee operation of Bowl Games. | Complaint ¶5. |
| 28. | The antitrust claims should be adjudicated under the rule of reason. | Exs. 53-54. |
| 29. | ASI's only written evidence of its alleged contract with the NCAA is comprised of NCAA Manuals and Handbooks. | Exs. 53-54, Ex. 67 (Interrogatory #4). |

DATED: Honolulu, Hawaii, June 14, 2006.

*[signature]*

WILLIAM C. McCORRISTON
KENNETH J. MANSFIELD
GREGORY L. CURTNER (*pro hac vice*)
ROBERT J. WIERENGA (*pro hac vice*)
ATLEEN KAUR (*pro hac vice*)

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION

CERTIFICATE OF WORD COUNT

I hereby certify, pursuant to Local Rules 7.5 and 56.1(d), that Defendant NCAA's Concise Statement of Material Undisputed Facts in Support of Motion for Summary Judgment contains 1,496 words.

DATED: Honolulu, Hawaii, June 14, 2006.

*(signature)*

WILLIAM C. MCCORRISTON
KENNETH J. MANSFIELD
GREGORY L. CURTNER *(pro hac vice)*
ROBERT J. WIERENGA *(pro hac vice)*
ATLEEN KAUR *(pro hac vice)*

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION

140316.1