Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


ALOHA SPORTS INC., a Hawaii    )
corporation,                   )
                               )
           Plaintiff,          )
                               )
     vs.                       )  CIVIL NO.:
                               )    CV04-00204 DAE/KSC
THE NATIONAL COLLEGIATE        )    (Antitrust)
ATHLETIC ASSOCIATION, an       )
unincorporated association,    )
                               )
           Defendant.          )
_____)




DEPOSITION OF PAUL H. FELLER

SANTA BARBARA, CALIFORNIA

MONDAY, MAY 8, 2006




REPORTED BY:

     JOAN L. PARKER, C.S.R. 12912


Pages 1 - 89


EXHIBIT 59

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 2

1    DEPOSITION OF PAUL H. FELLER, THE WITNESS, TAKEN ON

2    BEHALF OF THE PLAINTIFF, ON MONDAY, MAY 8, 2006,

3    COMMENCING AT 9:29 A.M., AT 3850 STATE STREET, BARK

4    ROOM, SANTA BARBARA, CALIFORNIA, BEFORE JOAN L. PARKER,

5    CSR NO. 12912, PURSUANT TO NOTICE.

6

7

8    APPEARANCES OF COUNSEL:

9

        FOR PLAINTIFF:
10
            BLECHER & COLLINS, P.C.
11          BY:  COURTNEY A. PALKO, ATTORNEY AT LAW
            515 South Figueroa Street
12          17th Floor
            Los Angeles, California  90071
13          (213) 622-4222

14      FOR DEFENDANT:

15          MILLER CANFIELD PADDOCK & STONE
            BY:  ATLEEN KAUR, ATTORNEY AT LAW
16          101 North Main Street
            Ann Arbor, Michigan  48108
17          (734) 668-7663

18
        FOR DEFENDANT - APPEARING TELEPHONICALLY:
19              (Morning Session Only)
            MILLER CANFIELD PADDOCK & STONE
20          BY:   ROBERT J. WIERENGA, ATTORNEY AT LAW
                  GREGORY L. CURTNEY, ATTORNEY AT LAW
21          101 North Main Street
            Ann Arbor, Michigan  48108
22          (734) 668-7663

23

24      ALSO PRESENT:

25          CRAIG BATES, Videographer

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 3

1                    I N D E X

2

3    WITNESS                EXAMINATION                PAGE

4    PAUL H. FELLER

5                           MS. PALKO                    6

6                           MS. KAUR                  73, 85

7         P L A I N T I F F ' S   E X H I B I T S

8    MARKED FOR IDENTIFICATION                        PAGE

9    103 -  Confidentiality Agreement; 9/20/00          64

10   104 -  Monday Phone Meeting letter; 1/19/01        65
             from Mr. Feller to Messrs. Daw and Rohlfing
11
     105 -  Irrevocable Binding Letter of              65
12          Intent; 2/20/03

13   106 -  Release Agreement; 4/28/03                 67

14   107 -  Letter of Intent; 2/11/03                  68

15   108 -  Aloha Bowl Accounts Itemized Categories    70
            Report for 4/1/97 - 3/31/98; 10/16/00
16
     109 -  Pro Sports & Entertainment Document        76
17          Production in response to subpoena
            served by NCAA
18

19        D E F E N D A N T ' S   E X H I B I T S

20   MARKED FOR IDENTIFICATION                        PAGE

21   110 -  Non-Binding Letter of Intent               77

22   111 -  Letter re:  Seattle Bowl Application        80
            for Recertification; 4/1/03
23
     112 -  2004 Emerald City Bowl NCAA                82
24          Initial Certification Application

25   113 -  2005 Seattle Bowl Presentation by          84
            Pro Sports & Entertainment, Inc; 4/20/04

c05b7d5e-f3a2-4190-835d-14599849e900

Page 4

1    QUESTIONS INSTRUCTED BY COUNSEL NOT TO ANSWER

2                          (NONE)

3

4

5

6              OBJECTIONS OF COUNSEL

7              PAGE              LINE

8               11                 7
                16                 6
9               16                13
                17                 8
10              19                19
                18                22
11              19                 6
                20                15
12              23                11
                23                23
13              24                13
                26                 9
14              27                 5
                28                 8
15              28                16
                29                20
16              30                17
                31                 7
17              31                25
                35                22
18              40                22
                41                 1
19              42                15
                43                 6
20              45                 2
                45                 9
21              46                 4
                58                20
22              59                10
                67                 8
23              68                24
                79                24
24

25

LegaLink,  a Merrill Company
800-826-0277  818-593-2300   Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 5

| | | |
|---|---|---|
| 09:00:05 | 1 | SANTA BARBARA, CALIFORNIA; MONDAY, MAY 8, 2006 |
| 09:07:59 | 2 | 9:29 A.M. |
| 09:07:59 | 3 | |
| 09:29:05 | 4 | THE VIDEOGRAPHER:  Good morning.  We're on |
| 09:29:21 | 5 | the record at approximately 9:29 a.m. on this 8th day of |
| 09:29:26 | 6 | May in the year 2006 for the videotaped deposition of |
| 09:29:31 | 7 | Paul Feller in the matter of Aloha Sports versus NCAA. |
| 09:29:34 | 8 | My name is Craig Bates.  I'm here today on |
| 09:29:39 | 9 | behalf of LegaLink Los Angeles.  The deposition is |
| 09:29:43 | 10 | taking place at the Pepper Tree Inn, 3850 State Street, |
| 09:29:47 | 11 | in the Bark Room, Santa Barbara, California. |
| 09:29:50 | 12 | This is the start of Tape No. 1, and |
| 09:29:52 | 13 | counsel, you may now proceed by introducing yourselves |
| 09:29:54 | 14 | for the record, please. |
| 09:29:55 | 15 | MS. PALKO:  Courtney Palko for the |
| 09:29:58 | 16 | plaintiff, Aloha Sports, Incorporated. |
| 09:29:59 | 17 | MS. KAUR:  Good morning.  My name is Atleen |
| 09:30:01 | 18 | Kaur from the law firm of Miller, Canfield, Paddock and |
| 09:30:06 | 19 | Stone, and we represent the National Collegiate Athletic |
| 09:30:10 | 20 | Association. |
| 09:30:10 | 21 | THE VIDEOGRAPHER:  Thank you.  Would the |
| 09:30:12 | 22 | court reporter -- |
| 09:30:15 | 23 | MS. KAUR:  And Greg Curtner of my firm will |
| 09:30:18 | 24 | be dialing in on the phone shortly. |
| | 25 | THE VIDEOGRAPHER:  Will the court reporter, |

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 6

1    then, please swear in the witness.

2

3                        PAUL H. FELLER,

4    having been first duly sworn by the Certified Shorthand

5    Reporter, was examined and testified as follows:

6

7                        EXAMINATION

8    BY MS. PALKO:

09:30:33    9    Q.  Good morning, Mr. Feller.  First, I want to thank

09:30:35    10   you for agreeing to appear here today to answer a few

09:30:36    11   questions.  My name is Courtney Palko.  I'm the attorney

09:30:40    12   for Aloha Sports, Inc.

09:30:41    13       Would you please state your full name and address

09:30:44    14   for the record.

09:30:44    15   A.  Paul Feller.  Business address is 10960 Wilshire

09:30:53    16   Boulevard, Los Angeles, California 93 -- or 90024.

09:30:53    17   Q.  And your home address?

09:30:55    18   A.  I don't believe I have to disclose that.

09:31:00    19   Q.  Okay.  Have you ever been deposed before?

09:31:01    20   A.  Yes.

09:31:02    21   Q.  How many times?

09:31:03    22   A.  Twice.

09:31:04    23   Q.  Twice?

09:31:05    24   A.  Twice.

09:31:06    25   Q.  And can you briefly explain what the lawsuits

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 20

| | | |
|---|---|---|
| 09:49:58 | 1 | Q. You heard it through Jim. |
| 09:50:03 | 2 | Do you know whether ASI had existing sponsors and |
| 09:50:07 | 3 | TV contracts in place for the bowl game? |
| 09:50:13 | 4 | A. I'm not sure about the sponsors. I do not |
| 09:50:21 | 5 | believe that they had an existing TV agreement. |
| 09:50:28 | 6 | I believe that there was a pending television |
| 09:50:28 | 7 | agreement which we were renegotiating at Pro Sports & |
| 09:50:40 | 8 | Entertainment to make. But the previous broadcast |
| 09:50:40 | 9 | agreement with ESPN, to the best of my |
| 09:50:45 | 10 | recollection -- recollection, had been terminated. |
| 09:50:48 | 11 | Q. Did Jim Haugh tell you whether the NCAA gave a |
| 09:50:55 | 12 | reason for the decertification of the Seattle Bowl? |
| 09:50:59 | 13 | A. Yes. |
| 09:50:59 | 14 | Q. And what did he say that reason was? |
| 09:51:02 | 15 | MS. KAUR: Objection. Might call for |
| 09:51:05 | 16 | hearsay. |
| 09:51:06 | 17 | THE WITNESS: The reason that he |
| 09:51:17 | 18 | communicated to me that the bowl game would not be |
| 09:51:21 | 19 | recertified was due to the fact that they did not meet |
| 09:51:26 | 20 | previous years' requirements of payments to the |
| 09:51:31 | 21 | attending teams, nor had they met the previous years' |
| 09:51:43 | 22 | requirements for the letter of credit requirements for |
| 09:51:48 | 23 | the NC-two-A application guidelines. |
| 09:51:57 | 24 | (Interruption by the court reporter.) |
| 09:51:57 | 25 | Q. BY MS. PALKO: Did you say anything to the |

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 22

| | | |
|---|---|---|
| 09:54:15 | 1 | show that we had the financial wherewithal, we had the |
| 09:54:19 | 2 | management and the knowledge of how to operate and |
| 09:54:23 | 3 | market a bowl game successfully. |
| 09:54:30 | 4 | And during this we submitted a written |
| 09:54:33 | 5 | application which included letters from various other |
| 09:54:40 | 6 | conferences or conference commissioners supporting our |
| 09:54:46 | 7 | ability to certify the bowl game and operate it; umm, a |
| 09:54:55 | 8 | letter from our financial institution showing that we |
| 09:55:01 | 9 | had the wherewithal to fulfill the minimum requirements |
| 09:55:10 | 10 | of a $2 million letter of credit; and outlining our |
| 09:55:13 | 11 | management and operations and marketing plans for the |
| 09:55:16 | 12 | following year's bowl game. |
| 09:55:19 | 13 | Q.  And how did the representatives of the |
| 09:55:26 | 14 | NC-double-A respond? |
| 09:55:28 | 15 | A.  Having sat through a number of NC-two-A meetings, |
| 09:55:35 | 16 | the response was similar to most I've attended.  They |
| 09:55:43 | 17 | were grateful for our presentation and communicated that |
| 09:55:46 | 18 | they would let us know the outcome at a future time. |
| 09:55:53 | 19 | Q.  Did you form an impression at that time as to |
| 09:55:53 | 20 | whether the Seattle Bowl would be certified? |
| 09:55:57 | 21 | A.  I recall being unsure due to the financial |
| 09:56:11 | 22 | wherewithal or the financial problems that ASI had had. |
| 09:56:31 | 23 | (Pause in proceedings.) |
| 09:56:47 | 24 | (Mr. Curtner joins proceedings.) |
| 09:56:49 | 25 | Q.  BY MS. PALKO:  Do you recall how many people were |

c05b7d5e-f3a2-4190-835d-14599849e900

Page 24

| | | |
|---|---|---|
| 09:58:25 | 1 | CEO of Pro Sports & Entertainment, Inc. we attended the |
| 09:58:30 | 2 | meeting with the intentions to provide a $2 million |
| 09:58:33 | 3 | letter of credit. |
| 09:58:34 | 4 | I believe we agreed to pay off the |
| 09:58:36 | 5 | conferences that had not been paid and review the |
| 09:58:43 | 6 | creditors and, if appropriate, pay the third-party |
| 09:58:54 | 7 | vendors that they were indebted to, which does not mean |
| 09:59:08 | 8 | all of their creditors. |
| 09:59:27 | 9 | Q. BY MS. PALKO: You said during your presentation |
| 09:59:29 | 10 | to the NC-double-A certification committee you |
| 09:59:35 | 11 | demonstrated that Pro Sports had the financial |
| 09:59:38 | 12 | wherewithal to present this game; correct? |
| 09:59:43 | 13 | MS. KAUR: Objection. |
| 09:59:44 | 14 | THE WITNESS: We presented a letter from our |
| 09:59:47 | 15 | financial institution that we met the minimum criteria |
| 09:59:53 | 16 | for a $2 million letter of credit. |
| 09:59:55 | 17 | Q. BY MS. PALKO: Did you present any other |
| 10:00:01 | 18 | documents? |
| 10:00:01 | 19 | A. Yes, we did. |
| 10:00:01 | 20 | Q. And what were those? |
| 10:00:02 | 21 | A. I don't recall. It'd be part of the NC-two-A |
| 10:00:11 | 22 | application. |
| 10:00:12 | 23 | Q. And you -- did you discuss your prior experience |
| 10:00:17 | 24 | in organizing and presenting sporting events? |
| 10:00:27 | 25 | A. Yes, we did. |

Page 29

10:08:20    1    A.    -- within our organization, etc.

10:08:23    2    Q.    Okay.    So it's your testimony that you only heard

10:08:31    3    that from Jim Haugh, you didn't hear it directly from

10:08:32    4    NC-double-A?

10:08:34    5    A.    Initially.

10:08:35    6    Q.    Initially.

10:08:36    7    A.    Yeah.    I first heard it through Jim Haugh.

10:08:42    8    Q.    And did later you hear it from someone from the

10:08:46    9    NC-double-A directly?

10:08:48    10    A.    Yes.

10:08:52    11    Q.    And what did they say to you?

10:09:00    12    A.    That the committee had elected not to re-certify

10:09:08    13    the bowl game due to the previous years' requirements

10:09:21    14    not being met.

10:09:25    15    Q.    And who do you recall said this to you?

10:09:34    16    A.    Sorry.    I don't recall if it was with the entire

10:09:48    17    committee or if it was individuals of the committee.

10:09:51    18    Q.    That's okay.    Do you have any understanding of

10:10:17    19    the relationship between Mr. Daw and the NC-double-A?

10:10:29    20        MS. KAUR:    Actually, I'm going to object to

10:10:32    21    the form.

10:10:33    22        But you can go ahead and answer.

10:10:38    23        THE WITNESS:    I'm not...

10:10:38    24    Q.    BY MS. PALKO:    Okay.    You say you don't have any

10:10:44    25    understanding?

Page 32

| | | |
|---|---|---|
| 10:15:06 | 1 | Q.  BY MS. PALKO:  -- with -- did you have a written |
| 10:15:11 | 2 | agreement in place? |
| 10:15:18 | 3 | A.  We had a written agreement in place subject to a |
| 10:15:22 | 4 | number of terms that had to be fulfilled (inaudible). |
| 10:15:22 | 5 | THE COURT REPORTER:  I'm sorry.  You trail |
| 10:15:22 | 6 | off at the end.  Just... |
| 10:15:29 | 7 | THE WITNESS:  We had a written agreement in |
| 10:15:30 | 8 | place subject to fulfillment of a number of |
| 10:15:36 | 9 | requirements. |
| 10:15:37 | 10 | Q.  BY MS. PALKO:  And can you list those |
| 10:15:43 | 11 | requirements. |
| 10:15:44 | 12 | A.  I believe they included re-certification, a |
| 10:16:01 | 13 | license agreement with the stadium, and subject to an |
| 10:16:17 | 14 | approved payout structure with the creditors, which |
| 10:16:27 | 15 | included the attending conferences. |
| 10:16:32 | 16 | Q.  Were you aware of all of the ASI creditors? |
| 10:16:38 | 17 | A.  We were aware of a number of them.  But we |
| 10:16:46 | 18 | did -- even after the bowl game not being |
| 10:16:49 | 19 | recertified -- received a number of phone calls from |
| 10:16:54 | 20 | people that we were not aware of that were local to the |
| 10:16:56 | 21 | Seattle area that had not been paid. |
| 10:17:00 | 22 | Q.  At the certification committee meeting, |
| 10:17:28 | 23 | were -- was Pro Sports prepared to execute the agreement |
| 10:17:31 | 24 | with ASI if the Seattle Bowl had been certified? |
| 10:17:36 | 25 | A.  Pending all of the terms had been fulfilled. |

Page 33

| | | |
|---|---|---|
| 10:17:44 | 1 | Q. What's -- what remained to be worked out between |
| 10:17:50 | 2 | the parties? |
| 10:17:50 | 3 | A. I believe it mostly related to the outstanding |
| 10:18:00 | 4 | payables. |
| 10:18:02 | 5 | Q. Did you make any statements to the NC-double-A |
| 10:18:19 | 6 | that you had an agreement with ASI to purchase the |
| 10:18:24 | 7 | Seattle Bowl if it were certified? |
| 10:18:27 | 8 | A. Yes. |
| 10:18:27 | 9 | Q. Did you have any conversations with Dennis Poppe |
| 10:18:41 | 10 | or anyone else from the NC-double-A prior to the |
| 10:18:41 | 11 | certification meeting about purchasing the Seattle Bowl? |
| 10:18:46 | 12 | A. Yes. |
| 10:18:46 | 13 | Q. And can you tell me about those communications? |
| 10:18:53 | 14 | A. As part of our due diligence, we wanted to assure |
| 10:19:03 | 15 | that if we were to go through the steps of acquiring the |
| 10:19:08 | 16 | Seattle Bowl and the rights to it, that the NC-two-A |
| 10:19:17 | 17 | would allow -- under the bylaws allow for the transfer |
| 10:19:23 | 18 | of rights from one organization to another. |
| 10:19:28 | 19 | Q. And they had communicated to you that they would |
| 10:19:31 | 20 | allow that? |
| 10:19:32 | 21 | A. They communicated to us that they have had |
| 10:19:37 | 22 | transfer rights from one ownership group to another |
| 10:19:42 | 23 | previously, and that, subject to the requirements per |
| 10:19:55 | 24 | the bylaws, led to certification of a bowl game be |
| 10:20:03 | 25 | fulfilled that they can authorize that or can approve it |

c05b7d5e-f3a2-4190-835d-14599849e900

Page 34

```
10:20:15    1      in concept.
10:20:16    2          Q.  Um-hmm.
10:20:18    3          A.  It was never communicated to us that they would.
10:20:23    4          Q.  I have here the deposition testimony of Jim Haugh
10:20:28    5      who we mentioned earlier, and I'm going to read portions
10:20:36    6      of his testimony and just to see if it refreshes your
10:20:36    7      recollection about some of the events and if it accords
10:20:39    8      with your memory.
10:20:42    9          A.  Okay.
10:20:42   10          Q.  Okay.
10:20:45   11              MS. KAUR:  Courtney, do you have a copy?
10:20:49   12              MS. PALKO:  I don't have a copy for you.
10:21:02   13      You can trust that I'm really reading.
10:21:02   14              THE COURT REPORTER:  And if you could
10:21:02   15      just -- sometimes when you read it you read fast, tend
10:21:02   16      to read faster than a normal speaking.
10:21:07   17              MS. PALKO:  Okay.
10:21:07   18          Q.  BY MS. PALKO:  This is relating to Mr. Daw's
10:21:20   19      involvement with Pro Sports.  I asked Mr. Haugh (as
10:21:20   20      read):
10:21:32   21                      "Was Mr. Daw going to have any
10:21:32   22                  involvement with Pro Sports?
10:21:32   23                      "ANSWER:  I have no idea.  There
10:21:32   24                  was talk, but, again, that would be
10:21:33   25                  between Paul Feller and Terry.
```

c05b7d5e-f3a2-4190-835d-14599849e900

Page 73

| | | |
|---|---|---|
| 11:38:57 | 1 | back on the record. |
| 11:38:57 | 2 | |
| 11:38:57 | 3 | EXAMINATION |
| 11:38:58 | 4 | BY MS. KAUR: |
| 11:38:58 | 5 | Q.  Mr. Feller, my name Atleen Kaur.  I represent the |
| 11:39:03 | 6 | NCAA in this matter.  I'm going to ask you just a few |
| 11:39:10 | 7 | questions and I'm going to try to get you out by 12:30. |
| 11:39:10 | 8 | But before I start on my questions, at the |
| 11:39:14 | 9 | request of Ms. Palko, I'm going to revisit the stack of |
| 11:39:18 | 10 | documents that she handed you to look at and verify that |
| 11:39:22 | 11 | they looked familiar to you and came Pro Sports' |
| 11:39:23 | 12 | records. |
| 11:39:23 | 13 | And we are going to label them as Exhibit 109, |
| 11:39:31 | 14 | next in order. |
| 11:39:31 | 15 | Okay.  Mr. Feller, if I may ask you to please |
| 11:39:34 | 16 | pick up Exhibit 103 again, which is, as you stated, the |
| 11:39:42 | 17 | confidentiality and non-solicitation agreement which has |
| 11:39:46 | 18 | a fax date on it of October 2, 2000; is that correct? |
| 11:39:54 | 19 | A.  That's correct. |
| 11:39:54 | 20 | Q.  If I could ask you to please read paragraph 6 of |
| 11:39:59 | 21 | that agreement into the record. |
| 11:40:01 | 22 | A.  "The parties agree that unless and until a |
| 11:40:08 | 23 | definitive agreement has been fully executed and |
| 11:40:08 | 24 | delivered, neither party will be under any legal |
| 11:40:09 | 25 | obligation of any kind whatsoever with respect to the |

c05b7d5e-f3a2-4190-835d-14599849e900

Page 74

| | | |
|---|---|---|
| 11:40:10 | 1 | possible transaction by virtue of this agreement, or any |
| 11:40:18 | 2 | written or oral expression with respect to a possible |
| 11:40:18 | 3 | transaction by either party or any of its |
| 11:40:23 | 4 | representatives except in the matters specifically |
| 11:40:27 | 5 | agreed to in this agreement. |
| 11:40:27 | 6 | Neither party shall have any obligation to |
| 11:40:31 | 7 | authorize or pursue with the other party any possible |
| 11:40:33 | 8 | transaction, and each party acknowledges its |
| 11:40:41 | 9 | understanding that the other party has not, as of the |
| 11:40:41 | 10 | date hereof, authorized any such possible transaction." |
| 11:40:42 | 11 | Q.  Thank you.  I understand that you testified that |
| 11:40:46 | 12 | since this fax was dated 2000, this agreement probably |
| 11:40:51 | 13 | related to your initial conversations with ASI in 2000 |
| 11:40:56 | 14 | about the acquisition of the Aloha Bowl rather than |
| 11:41:03 | 15 | acquisition of the Seattle Bowl? |
| 11:41:03 | 16 | A.  Yes. |
| 11:41:03 | 17 | Q.  Was there a similar agreement for the Seattle |
| 11:41:12 | 18 | Bowl in 2000? |
| 11:41:14 | 19 | A.  There might have been; I don't know. |
| 11:41:15 | 20 | Q.  You don't know for sure. |
| 11:41:15 | 21 | A.  Right. |
| 11:41:20 | 22 | Q.  But is it pretty standard for initial discussions |
| 11:41:23 | 23 | and initial agreements such as this to have a clause |
| 11:41:25 | 24 | which states that a final written agreement must be |
| 11:41:31 | 25 | executed? |

LegaLink,  a Merrill Company
800-826-0277    818-593-2300    Fax 818-593-2301    www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 75

| | | |
|---|---|---|
| 11:41:31 | 1 | A.  For us it is. |
| 11:41:31 | 2 | Q.  Now, if I could direct your attention to |
| 11:41:43 | 3 | Exhibit 105.  Exhibit 105 is titled, "Irrevocable |
| 11:41:56 | 4 | Binding Letter of Intent"; is that correct? |
| 11:41:56 | 5 | A.  Irrevocable binding letter of intent. |
| 11:42:00 | 6 | Q.  Okay.  Now, if you could look at the last page of |
| 11:42:04 | 7 | it and verify that you have not signed this agreement; |
| 11:42:09 | 8 | is that correct? |
| 11:42:09 | 9 | A.  That's correct. |
| 11:42:09 | 10 | Q.  You testified that you recalled signing an |
| 11:42:13 | 11 | agreement, but do you recall whether it was a binding or |
| 11:42:16 | 12 | nonbinding letter of agreement that you might have |
| 11:42:18 | 13 | signed with ASI? |
| 11:42:23 | 14 | A.  I don't. |
| 11:42:23 | 15 | Q.  Going to Exhibit 107, the last page of that |
| 11:42:51 | 16 | exhibit, ASI-22000020, bears your signature or at least |
| 11:43:05 | 17 | what appears to be your signature. |
| 11:43:05 | 18 | A.  Yes. |
| 11:43:05 | 19 | Q.  Now, if you go to a couple of pages ahead, |
| 11:43:06 | 20 | ASI-22000018, which appears to be the beginning of this |
| 11:43:13 | 21 | agreement that bears your signature, it is titled |
| 11:43:19 | 22 | "Nonbinding Letter of Intent"; is that correct? |
| 11:43:19 | 23 | A.  That's correct. |
| 11:43:20 | 24 | Q.  Thank you.  You testified that you had |
| 11:43:28 | 25 | been -- you attended the NCAA certification meeting in |

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 78

11:47:16    1    a draft?

11:47:21    2        A.   That's correct.   That's what it appears to be.

11:47:21    3        Q.   Mr. Feller, we have not received in response to

11:47:24    4    our subpoena a copy of any signed agreement by both

11:47:28    5    parties.

11:47:28    6            And -- and I will represent to you that Aloha

11:47:33    7    Sports has not been able to produce to us a final

11:47:36    8    written agreement between Pro Sports and

11:47:45    9    Aloha Sports, Inc. signed by both parties.

11:47:46    10           But would that refresh your recollection in any

11:47:49    11   way about whether any signed agreement -- final signed

11:47:52    12   agreement actually existed?

11:47:55    13       A.   I thought there was a signed nonbinding letter of

11:48:01    14   intent.

11:48:01    15       Q.   A nonbinding letter of intent?

11:48:03    16       A.   Right.

11:48:04    17       Q.   But not a final written agreement?

11:48:06    18       A.   To the best of my knowledge, I don't think so.

11:48:10    19   But I don't know for sure.

11:48:26    20       Q.   Okay.   Do you recall the purchase price that

11:48:31    21   Pro Sports would have paid for -- had agreed to pay for

11:48:40    22   Aloha Sports, Incorporated for the Seattle Bowl?

11:48:41    23       A.   No, I don't.

11:48:42    24       Q.   But a provision of the purchase would be that

11:48:46    25   some debts, existing debts, would be paid off?

Page 84

| | | |
|---|---|---|
| 11:58:13 | 1 | in 2005. |
| 11:58:14 | 2 | Q.  I see.  But the committee that, I mean, for the |
| 11:58:20 | 3 | 2005 application, would have to be acted upon in the |
| 11:58:22 | 4 | following year? |
| 11:58:23 | 5 | A.  That's correct. |
| 11:58:24 | 6 | MS. KAUR:  Okay.  We're going mark this next |
| 11:58:26 | 7 | in order, 113. |
| 11:58:46 | 8 | (Exhibit 113 was marked for identification.) |
| 11:58:48 | 9 | Q.  BY MS. KAUR:  This documents bears the Bates |
| 11:58:50 | 10 | labels PSNE-00081 through -97. |
| 11:58:58 | 11 | Do you recognize this document? |
| 11:59:03 | 12 | A.  Yes, I do. |
| 11:59:04 | 13 | Q.  What is this document? |
| 11:59:07 | 14 | A.  This is a 2005 Seattle Bowl presentation. |
| 11:59:14 | 15 | Q.  To the NCAA? |
| 11:59:16 | 16 | A.  Yes. |
| 11:59:17 | 17 | Q.  If I could direct your attention to PSNE-00088. |
| 11:59:35 | 18 | That page bears the title, "Community," and under |
| 11:59:42 | 19 | "Community Launch Game Plan" it states:  "Identify |
| 11:59:45 | 20 | problems, slash, setbacks.  Bullet point:  Prior owners' |
| 11:59:50 | 21 | failure and poor reputation.  Bullet point 2:  Hesitancy |
| 11:59:56 | 22 | of local community, trust, involvement." |
| 11:59:58 | 23 | And then under that is another bullet point which |
| 12:00:02 | 24 | states, "Objectives:  Conduct open and honest |
| 12:00:05 | 25 | discussions, address issues head on, understand and |

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 85

12:00:11    1    eliminate past failures."

12:00:16    2              So does this comport with PSNE and your

12:00:17    3    understanding at the time that the past owners had left

12:00:23    4    a bad taste in the community, a poor reputation in the

12:00:24    5    community?

12:00:24    6       A.  Yes.  There is a number of concerns with the

12:00:32    7    previous regime in ASI in their operations with the bowl

12:00:33    8    game and not paying bills.

12:00:57    9              MS. KAUR:  Okay.  Can we take a five-minute

12:01:00   10    break?  I think I might be almost done but I just want

12:01:05   11    to look over my notes once before we end.

12:01:09   12              THE VIDEOGRAPHER:  It's 12 noon.  We're off

12:01:11   13    the record.

12:03:13   14              (Brief recess.)

12:03:13   15              THE VIDEOGRAPHER:  Time is 12:03.  We're

12:03:25   16    back on the record.

12:03:25   17              MS. KAUR:  Thanks.

12:03:25   18

12:03:25   19              EXAMINATION (continued)

12:03:25   20       Q.  BY MS. KAUR:  Mr. Feller, I just have a couple

12:03:26   21    more questions.

12:03:27   22              In 2000, when you were considering purchasing

12:03:32   23    Aloha Bowl from ASI, who introduced you to Mr. Rohlfing

12:03:37   24    and Mr. Daw?

12:03:40   25       A.  They contacted us.

LegaLink,  a Merrill Company
800-826-0277   818-593-2300   Fax 818-593-2301   www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 86

| 12:03:43 | 1 | Q. Do you have any idea how they found out about you |
| 12:03:46 | 2 | or why they would pick Pro Sports & Entertainment? |
| 12:03:51 | 3 | A. We're a fairly large sports-specific operations |
| 12:03:56 | 4 | marketing company. We're out there acquiring a lot of |
| 12:04:03 | 5 | different properties, and they probably had it |
| 12:04:03 | 6 | communicated to them through the industry. |
| 12:04:05 | 7 | Q. Okay. Does your company still own the rights to |
| 12:04:14 | 8 | Freedom Bowl? |
| 12:04:22 | 9 | A. We own the common law rights; the trademark, |
| 12:04:22 | 10 | revenue rights. |
| 12:04:22 | 11 | Q. Okay. |
| 12:04:22 | 12 | A. Revenue rights, yeah. |
| 12:04:22 | 13 | But -- but it's a nonexisting bowl game right |
| 12:04:23 | 14 | now, it's not been since '96. |
| 12:04:27 | 15 | Q. I see. Umm, you buy and sell sports properties |
| 12:04:36 | 16 | all the time; is that correct? |
| 12:04:37 | 17 | A. We don't sell them. |
| 12:04:39 | 18 | Q. You buy them? |
| 12:04:40 | 19 | A. We -- we acquire them, yes. |
| 12:04:42 | 20 | Q. Okay. When you acquire them, you usually |
| 12:04:49 | 21 | commemorate your agreement in writing; is that correct? |
| 12:04:51 | 22 | A. Yes. |
| 12:04:55 | 23 | MS. KAUR: That's all, thank you. |
| 12:04:55 | 24 | MS. PALKO: That brings us to the end of |
| 12:05:00 | 25 | Mr. Feller's deposition. |

LegaLink, a Merrill Company
800-826-0277   818-593-2300   Fax 818-593-2301   www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 87

| | | |
|---|---|---|
| 12:05:00 | 1 | THE VIDEOGRAPHER:  Off the record? |
| 12:05:15 | 2 | THE REPORTER:  Any stipulations?  Code? |
| 12:05:15 | 3 | MS. PALKO:  Just the standard.  He'll have |
| 12:05:16 | 4 | 30 days to review it. |
| 12:05:17 | 5 | Once you get the transcript, review it and |
| 12:05:18 | 6 | send it back signed.  If you do not submit it, then it |
| 12:05:18 | 7 | will be, the original will be used as if it was final -- |
| 12:05:22 | 8 | THE WITNESS:  Okay. |
| 12:05:23 | 9 | MS. PALKO: -- and signed. |
| 12:05:23 | 10 | THE WITNESS:  That's fair enough. |
| 12:05:26 | 11 | So, I don't have anything to do with any of |
| 12:05:28 | 12 | this documentation. |
| 12:05:28 | 13 | MS. PALKO:  No. |
| 12:05:29 | 14 | THE WITNESS:  Okay. |
| 12:05:29 | 15 | THE VIDEOGRAPHER:  Time is 12:05.  This ends |
| 12:05:33 | 16 | the deposition; end Tape 2 of 2; off record. |
| 12:05:35 | 17 | THE WITNESS:  Now, do I have to review |
| 12:05:35 | 18 | anything? |
| 12:06:49 | 19 | (Discussion held off the record.) |
| 12:06:49 | 20 | MS. KAUR:  So I will state for the record |
| 12:06:57 | 21 | that both counsel stipulate that LegaLink will send |
| 12:06:57 | 22 | Mr. Feller's deposition to him by mail for review and |
| 12:06:58 | 23 | that Mr. Feller will mail it back to Ms. Courtney |
| 12:07:03 | 24 | Palko's office. |
| | 25 | (The deposition was adjourned at 12:07 p.m.) |

LegaLink,  a Merrill Company
800-826-0277  818-593-2300  Fax 818-593-2301  www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 88

1    STATE OF CALIFORNIA        )

2    COUNTY OF SANTA BARBARA  )  ss.

3

4

5            I, PAUL H. FELLER, hereby certify under

6    penalty of perjury under the laws of the State of

7    California that the foregoing is true and correct.

8            Executed this _____ day of

9    _____, 2006, at _____, California.

10

11

12

13

14

15            _____

16                 PAUL H. FELLER

17

18

19                --oo0Ooo--

20

21

22

23

24

25

LegaLink,  a Merrill Company
800-826-0277   818-593-2300   Fax 818-593-2301   www.legalink.com
c05b7d5e-f3a2-4190-835d-14599849e900

Page 89

1    STATE OF CALIFORNIA            )

2    COUNTY OF SANTA BARBARA        ) ss.

3

4            I, JOAN L. PARKER, CSR 12919, do hereby

5    certify:

6            That prior to being examined, the witness in

7    the foregoing proceeding was by me duly sworn to testify

8    to the truth, the whole truth, and nothing but the

9    truth;

10           That said transcript was taken down by me in

11   shorthand and thereafter reduced to typewriting via

12   computer-aided transcription under my direction and

13   supervision, and is a true and correct transcription of

14   my original stenographic notes.

15           I further certify that I am neither counsel

16   for, nor related to, any party to said action, nor in

17   anywise interested in the outcome thereof.

18           UNDER PENALTY OF PERJURY, I declare that the

19   foregoing is true and correct.

20           Executed this ___ day of _____, 2006,

21   at Santa Barbara, California.

22

23

24   _____

     JOAN L. PARKER
25   CSR No. 12912