# SEATTLE BOWL AGREEMENT BETWEEN

# THE PACIFIC-10 CONFERENCE AND

# ALOHA SPORTS INC.

THIS AGREEMENT is made to be effective as of the September 25, 2001, between the PACIFIC-10 CONFERENCE (hereinafter referred to as the "Pac-10"), and ALOHA SPORTS INC., a Hawaii corporation, (hereinafter referred to as "ASI"), and supercedes the Agreements of October 10, 1998 and July 15, 1999.

The Pacific-10 Conference is a non profit unincorporated association of ten universities, with headquarters at 800 S. Broadway, Suite 400, Walnut Creek, CA 94596, consisting of the University Of Washington; Washington State University; the University of Oregon; Oregon State University; Stanford University; the University of California, Berkeley; the University of California, Los Angeles; the University of Southern California; the University of Arizona; and Arizona State University.

ASI is a corporation, located at 2305 Cooper Road, Honolulu, Hawaii 96822.

The 2001 SEATTLE BOWL post-season football game, as certified by the National Collegiate Athletic Association, is to be played in Safeco Field, located in the City of Seattle, Washington on December 27, 2001, at 2:00 p.m. P.S.T.

## THE PARTIES AGREE AS FOLLOWS:

1.  Definition of Terms.

The following terms used in this Agreement shall have the definition and meaning herewith described:

    (a)    "Agreement" shall mean this contract and agreement between the parties hereto.

    (b)    "ASI" shall mean the Aloha Sports Inc., the sponsoring organization of the SEATTLE BOWL GAME.

    (c)    "Broadcasters" shall mean such person, firm or corporation, whether one or more, as may be the holder or holders of radio or television, cable television, or other broadcasting rights, or any of them, to the Game.

    (d)    "College Football Bowl Championship Series" shall mean the organization of post-season football bowl games and several college conferences, plus the University of Notre Dame, as modified from time to time by separate agreement, whereby the varsity football teams of members

of those conferences are identified for participation in certain designated post-season bowls. The participating conferences as of the date of this Agreement, are the Pac-10, Atlantic Coast, Big East, Big 12, Big Ten and Southeast. Participating bowls include the Rose, Fiesta, Orange and Sugar.

(e) "Game" shall mean the Seattle Bowl postseason football game to be played at Safeco Field, in Seattle, Washington, between a varsity football team of the Pac-10 and an opponent college varsity football team selected pursuant to this Agreement.

(f) "NCAA" shall mean the National Collegiate Athletic Association, which is charged with oversight of college football bowl games and establishes policies and playing rules for the conduct of such bowl games.

(g) "Opponent team" shall mean the varsity football team to be selected to oppose the Pac-10 representative.

(h) "Pac-10 representative" shall mean the varsity football team of a Pac-10 member institution identified in accordance with the provisions herein to play in the Game covered by this Agreement.

(i) "Varsity football team" shall mean a football team composed of students of the institution which they represent, all of whom shall be eligible to represent their institution in varsity football competition under the rules and regulations of their institution, the NCAA, and the conference, if any, of which their institution is a member.

2. **Pac-10 Participation in Game**

(a) Subsequent to the 2001 regular college football season, the Pac-10 will provide a varsity football team representing one of its member institutions for participation in the Game on December 27, 2001.

(b) The parties agree that the representative of the Pac-10 that participates in the Game shall be a team which is eligible for post-season play selected pursuant to paragraph 3. Selection of Teams, which is available subsequent to fulfillment by the Pac-10 of its commitments to provide (1) its champion to the Rose Bowl, or designated Bowl Championship Series bowl game; (2) an additional team to a bowl participating in the College Football Bowl Championship Series, if selected by such bowl; (3) a team to the Holiday Bowl; and (4) a team to the Sun Bowl. If the Pacific-10 Conference does not have a team eligible to qualify for the Game in accordance with NCAA rules then ASI has the right to go outside of the Pacific-10 Conference to select a team to participate against the opponent team in the Game.

3. **Selection of Teams**

The parties agree that the Pac-10 Conference, in 2001, shall provide its fourth-place team to play in the Seattle Bowl, subject to paragraph 2(b). However, the parties in the Seattle Bowl, may

wish to have some flexibility to consider geography in the process whereby the Pac-10 Conference's representative in that game is determined. Accordingly, the following policies shall govern the selection:

(a). ASI, ESPN, ABC, the Pac-10 Conference and the Las Vegas Bowl shall have frequent and open communications regarding the selection of teams in order to arrange the best games possible for all parties involved.

(b). When the two teams that finish in fourth and fifth place in the final regular-season standings of the Pac-10 Conference are identified, if reassignment of the two would increase the likelihood more total tickets would be sold to the two games, then ASI, ESPN, ABC, the Pac-10, the Las Vegas Bowl, and the participating Pac-10 teams will consider exchanging the games in which the teams are contracted to play.

(c) If unanimous agreement for the reassignment of the fourth and fifth-place teams is not reached among the aforementioned parties, the Pac-10 fourth-place team shall participate in the Seattle Bowl in 2001.

(d) The opponent team in the Seattle Bowl shall be selected from the bowl-eligible fourth or fifth place teams from the Atlantic Coast Conference.

4. **Minimum Guaranteed Payment**

In consideration for its appearance in the Game, ASI shall pay to the Pac-10 representative the greater of the minimum payment established by the NCAA (at present $750,000) or thirty-seven and one-half percent (37-1/2) of the gross receipts of the Game as defined in the National Collegiate Athletic Association Post-Season Football Handbook. The terms of the Post-Season Football Handbook applicable to the then current season are incorporated herein by this reference.

5. **Term**

The term of this Agreement shall be for one (1) year, covering the Game to be played subsequent to and immediately following the 2001 college football season.

6. **Administration and Conduct of Games**

All aspects of the administration and conduct of the Game shall be in compliance with the rules and policies of the NCAA throughout the term of this Agreement. ASI and the Pac-10 representative shall enter into a contract that addresses game management and administrative details of the Pac-10 representatives' participation in the Game.

7. **Game-related Elements; Team Choices; Hotels**

(a) The Pac-10 representative and the opponent team shall be treated equally in

terms and conditions and selection of all Game-related elements, including, but not limited to, hotels, practice sites, practice times, dressing rooms, benches, uniforms, ticket locations and order of band performance. Any elements involving choices shall be made by representatives of the competing institutions and the Executive Director or designated board member of ASI in a timely fashion following the identification of the participating institutions.

(b)   The Pac-10 representative agrees to house its official team party, players, coaches and representatives for a minimum of six (6) consecutive nights in one of the following hotels: The Crown Plaza; The Renaissance Madison; The West Coast Grand; The Elliott (Hyatt); The Westin Seattle; or the Sheraton Seattle Hotel and Tower. The Pac-10 representative shall not be required to pay more than $165.00, plus tax, per night, for a double standard room at the team hotel. The Pac-10 representative shall be provided with two complimentary suites at the team hotel, with additional suites available at the hotel's standard rate.

8. **Terrace Club Level Seating/Private Accommodations**

ASI shall provide, at no charge, to the Pac-10 Conference office and its participating institutional representative a total of thirty-two (32) Terrace Club Level Seats at Safeco Field along with private accommodations for the Athletic Director's and institutional President's official party and similar seating and accommodations to the opponent conference office and the opponent participating institutional representative and their Athletic Director's and President's official party.

9. **Pac-10 Representative at Site of Game**

The Pac-10 representative agrees to house its varsity football team in the Seattle, Washington area preceding the Game, commencing not later than six (6) days prior to the date of the Game, and continuously thereafter until the date of the Game. The Pac-10 representative agrees to arrive by 12:00 noon on December 21st, with that date to be adjusted accordingly if the Game is played on a date other than December 27th. The Pac-10 representative may depart immediately following the Game.

10. **Game Promotion**

The parties agree that it is the goal of each to seek optimum public awareness of their association with the Game. Each therefore pledges best efforts to publicize the participation in the Game by the Pac-10. Each Pac-10 member shall include information on the association in its normal media publications and will otherwise publicize the Game when possible. ASI shall publicize the association with the Pac-10 to the maximum extent possible.

11. **Bowl Site Checklist**

By October 1, ASI, shall submit to each member of the Pac-10 complete information on the forthcoming Game as set forth in the Bowl Site Checklist contained in the Post-Season Football Handbook of the NCAA.

9-13-01 Seattle Bowl/Aloha Sports                         4

Immediately upon selection, the Pac-10 representative shall provide ASI the information identified in the INSTITUTIONAL FORM as set forth in the Post-Season Football Handbook of the NCAA within two (2) days of said selection.

**12.   Radio Policy**

It is agreed that ASI shall select and designate the official radio broadcaster for the Game. In addition to the official radio broadcaster for the Game, it is agreed that the official radio network of the Pac-10 representative and the institutional station (if any) of the Pac-10 representative may broadcast the Game. A reasonable rights fee may be charged the flagship radio station by ASI. The flagship radio station may display one banner from its broadcast position. The official flagship station of the Pac-10 representative shall receive the credentials necessary for it to originate its broadcast from the Safeco Field.

The institutional radio station (if any) of the Pac-10 representative also shall be permitted to originate a broadcast of the Game without payment of a rights fee and shall receive necessary credentials for such purpose.

**13.   Title Sponsor**

The parties acknowledge that a title sponsor, at present, is not associated with the Game. If a title sponsor is obtained, all parties shall refer to the game with the title sponsor's name included. Before awarding a title sponsorship to any entity, ASI shall advise the Pac-10 of the identity of the potential title sponsor and consider the Pac-10's input concerning whether association with said entity would be appropriate for institutions of higher education.

**14.   Game Rules**

The Game rules shall be the current football playing rules of the NCAA for the preceding football season.

**15.   Game Officials**

The game officials for the Game shall be appointed through procedures administered by the NCAA. In no case may the officials be assigned by or from the assigning agency of either competing team or conference.

**16.   Game Ball**

The official football used by each team shall be a football conforming with the NCAA rules.

Civil No. CV04-00204 DAE/KSC        EXHIBIT "85"                    ASI-30-000299

17. **Attendance at Official Seattle Bowl Functions**

(a) On the day before the Game, institutional personnel and ASI officials, as required by the NCAA, shall attend a pregame meeting. The television format, game timing and other administrative and procedural details shall be reviewed at that time. The "Checklist for Pregame Meeting" of the NCAA shall be reviewed at that meeting.

(b) The Pac-10 representative shall have appropriate representatives, including coaches and players where appropriate, participate in Game events to include:

(1) A press opportunity at the airport upon team arrival and a minimum of a daily press conference at the hotel;

(2) A kickoff function including selected players from each participating team, its head coach and athletic director;

(3) An awards ceremony and press conference immediately following the Game;

(4) Other such events as mutually agreed upon by the Pac-10 representative and ASI.

(5) An early December planning meeting.

18. **Game Management**

The management of the Game shall be under the jurisdiction of ASI. However, ASI shall work closely with the Bowl Committee of the Pac-10 to keep the Pac-10 advised of the status, operation and conduct of the Game. In addition to the required financial reports, due by March 31, following the Game, ASI shall provide the Pac-10 with a report reviewing all aspects of the management and conduct of the Game. ASI also agrees that its Executive Director or designated board member and other personnel, as requested by the Pac-10, shall at a mutually agreeable time meet with the Pac-10 or its designated body on or before October 1, 2001, to review Game operations and management. The Pac-10 agrees that it will share with ASI the Institutional Bowl Game Report its representative prepares for the NCAA.

19. **Ticket Availability, Requirements**

(a) In accordance with the policies of the NCAA, ASI agree to make available for purchase by the Pac-10 representative a minimum of one-sixth (1/6) of the tickets available for the Game at Safeco Field which is agreed to be seven thousand five hundred (7,500) tickets. The number of tickets made available, and their price(s) shall be equal for both institutions participating in the Game.



(b) The Pac-10 agrees that its representative shall guarantee the purchase of a minimum of 7,500 tickets to the Game. The price for these tickets for 2001 shall be Fifty Dollars ($50.00) for a total commitment of $375,000.00 in ticket purchases.

(c) The official Seating Chart of the Safeco Field, with the allocation of 7,500 tickets to the Pac-10 identified, plus the allocation of the 7,500 tickets to be purchased shall be made available to the Pac-10 by September 15, 2001.

(d) The parties agree that should the Pac-10 representative have unused tickets available as of seven (7) days prior to the Game, it shall immediately so notify ASI so that ASI may attempt to sell the excess tickets in order to maximize attendance at the Game. (The Pac-10 representative shall remain financially responsible for any such tickets which are turned over to ASI and not sold).

(e) Should the Opponent institution have unused tickets available, such tickets first shall be offered to the Pac-10 representative prior to offer to any other party. The Pac-10 representative, however, shall not be obligated to purchase the excess tickets of the Opponent or take them on consignment.

20. Band

(a) The Pac-10 representative shall bring its band, consisting of a minimum of thirty (30) band members, to Seattle, Washington, and make the band available for participation in pep rallies and pre-Game festivities. All costs, charges and expenses for travel, housing, supplies, equipment or other expenses of the band of the Pac-10 representative shall be borne solely by the Pac-10 representative.

(b) The band of the Pac-10 representative shall not be required to arrive in Seattle more than three (3) days prior to the Game.

21. Financial Settlement

Not later than April 1 of the year immediately following the Game, or such date as is then currently required by the NCAA, ASI shall deliver to the Pac-10 the Seattle Bowl payment due hereunder. Concurrently with such payment, ASI shall deliver to the Pac-10 an audit from a Certified Public Accountant of the income, charges and expenses of the Game.

22. Team Gifts

ASI shall provide at no cost to the participating SeattleBowl institutions, 100 team gifts for participation in the Game to the Pac-10 representative and to the Opponent team respectively. Additional team gifts may be purchased by the competing institutions.

Civil No. CV04-00204 DAE/KSC    EXHIBIT "85"    ASI-30-000301



23. **Team and Institutional Expense**

All costs, charges and expenses for travel, housing, supplies, equipment of other expenses of the Pac-10 representative team, players, coaches, trainers, officials or band, shall be borne solely the Pac-10 representative, and shall not be chargeable against any of the receipts or income of the Game. Such similar expenses of the Opponent shall be borne by it and shall not be chargeable against any of the receipts or income of the Game.

24. **Musical compositions, Presentations**

(a) The Pac-10 agrees that its representative will submit a list of all musical compositions which any band affiliated with it may play in the stadium on the day of the Game to the ASI Executive Director at least fourteen (14) days prior to the Game so that clearances may be secured by the Broadcasters, and agrees that if the Broadcasters are unable to clear any of the compositions for performance, the band will not play any composition not cleared.

(b) The Pac-10 representative shall submit the theme and script for its band and other presentations to the ASI Executive Director for approval at least fourteen (14) days prior to the Game.

(c) Neither the band from the Pac-10 representative nor the band from the Opponent institution shall play after the team on offense breaks from the huddle.

25. **Time of Performance and Payments**

Time is of the essence in this Agreement with respect to all provisions hereof specifying a particular time or date for the performance of any act or the exercise of any right or privilege by any of the parties hereto. All payments to be made under the provisions of this Agreement shall be made when due or payable.

26. **Insurance**

(a) ASI shall obtain and maintain in force during the term of this Agreement, insurance covering losses due to cancellation or termination of the Game, naming ASI and the Pac-10 as insureds in an adequate amount to cover anticipated losses from such termination or cancellation including, but not limited to, loss of ticket revenue, television rights fees and other sources of game income. Should the Game not be played, ASI shall take all appropriate steps on behalf of the Game and parties hereto to obtain appropriate insurance reimbursement for the resultant loss of income. Each of the participating institutions shall be responsible for equal shares of the cost of the policy covering their participation each year.

(b) ASI shall name the Pac-10, and its participating representative institution as an added insured on a general comprehensive liability insurance policy with limits of at least Five Million Dollars ($5,000,000) to provide coverage for any and all negligent acts or omissions sufficient

to fully cover participation of the parties in all activities attendant to taking part in the Game. Evidence of said policy shall be provided to the Pac-10 fifteen (15) days prior to the Game.

### 27. Non-Liability of Officers

The persons executing this Agreement on behalf of the parties, respectively, shall incur no personal liability whatsoever by reason of their execution of this Agreement.

### 28. Indemnification

The Pac-10 and ASI, respectively, agree to indemnify and hold harmless each other against, and in respect of any and all claims, losses, expenses, costs, obligations and liabilities, including reasonable attorneys' fees, either party may incur by reason of any act or omission solely of the other party or any of its respective agents, employees, successors or anyone acting by or on behalf of such party, that constitutes negligence, a breach or default under, or failure to perform, any obligation, duty or liability of that party under this Agreement.

### 29. Force Majeure

(a) If for any reason the Game is prevented from being played or shortened due to weather, war, act of God, national emergency, governmental restriction, preemption for an event of overwhelming public importance, or like cause, the occurrence of which is not within the control of ASI, then the parties shall negotiate for a pro rata reduction in the Game fees set forth herein.

(b) If a Pac-10 institution is unable to participate in the Game after being identified as the Pac-10's representative, which inability is occasioned by an unforeseen emergency affecting that team or institution, ASI agrees to first allow the Pac-10 to provide a substitute bowl eligible Pac-10 representative mutually agreed upon by the Pac-10 and ASI to play in the Game prior to ASI inviting any other institution to take part in the Game.

### 30. Entire Agreement

This Agreement contains the entire agreement of the parties hereto. No promise, representation, warranty or covenant not included in this Agreement has been or is being relied upon by either party hereto. Each party has relied or is relying on its own examination of this Agreement and the documents and contracts referred to herein, the counsel of its own advisors and the warranties, representations, duties and covenants contained in this Agreement.

### 31. Agreement Not Contrary to Law/Severability

To the best knowledge and belief of the parties hereto, this Agreement contains no provision that is contrary to any federal, state or local law, ruling or regulation. If any provision of this Agreement, or any part thereof, shall at any time be held to be invalid, in whole or in part, under any applicable federal, state or local law, ruling or regulation by a court of competent jurisdiction, or by

an administrative agency of the federal, state or local government, or by an arbitrator with proper jurisdiction, then such provision or portion thereof of the provisions and/or agreements, as appropriate, shall remain in effect only to the extent permitted, and the remaining portions thereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

### 32. No Waiver

The failure of a party to seek redress for the violation of or to insist upon strict performance of any provision of this Agreement on any occasion, shall not prevent or dilute such party's right to insist later upon such performance of the same or similar provision or to have redress for the same or similar violation, regardless of such party's prior knowledge, or lack of knowledge, thereof.

### 33. Governing Law

This Agreement shall be governed by the laws of the State of California.

### 34. Notice

Any written notice required in this Agreement shall be deemed to have been given when personally delivered or deposited in the United States mail, certified or registered mail, postage prepaid, with return receipt requested, addressed to the other party to the Agreement at the address set forth on page 1, with a copy to Chris W. Burford, III, 800 S. Broadway, Suite 400, Walnut Creek, California 94596, and a copy to Frederick W. Rohlfing, III, 1157 Fort Street, Honolulu, Hawaii 96813.

### 35. Authorization

(a) The Pac-10 warrants that it has full right, power and authority to enter into this Agreement and grant the rights granted to ASI for a Pac-10 representative's participation in the Seattle Bowl herein, and that the President and Commissioner of the Pac-10 is authorized to sign this Agreement on the Pac-10's behalf, subject to final ratification of the signed Agreement by the chief executive officer of each institution of the Pac-10 within forty-five (45) days of receipt of this signed Agreement.

(b) ASI warrants that it has full right, power and authority to enter into this Agreement and the person signing this Agreement is authorized to bind and to agree to the terms and conditions granted to the Pac-10 as stated herein.

### 36. Bowl Logo/Merchandising/Marketing

(a) Authorizations. The Pac-10 and ASI, on behalf of the Seattle Bowl, authorize each other, on a non-exclusive basis, to include their respective names, slogans, logos, seals and/or other identifying marks in the Game and institution's Game-related merchandising efforts, with the entity requesting said use paying any licensing or royalty fee due the entity owning said rights. It is

understood that income derived by the ASI in this manner shall become a portion of ASI's Game gross receipts and shall be distributed in accordance with the existing NCAA rules and regulations. It is the responsibility of the Pac-10, its member institutions, and ASI to contact one another regarding use of said conference, institutional or Game marks, logos, seals, mascots, or other identifications, and to contact their respective designated licensor regarding use of said marks and logos. ASI acknowledges that any use of individual Pac-10 member institution's marks, logos and slogans must be secured from that institution.

(b) ASI shall be responsible for the art work and for manufacturing of the Seattle Bowl logo and shall provide said logos to the participating teams to be attached to team jerseys.

### 37. Contract with Representative

The Pac-10 acknowledges that prior to the Game, ASI and the Pac-10 representative shall execute a separate game contract, however, that contract will incorporate and comply with the provisions of this Agreement, which is superior to such game contract.

### 38. Assignment

This Agreement may not be assigned by either party with the sole exception that ASI may assign its interest to the financial institution that issues ASI a letter of credit as required by the NCAA for use in sponsoring the Seattle Bowl Game.

### 39. Default

The following shall constitute defaults under this Agreement.

(a) If ASI defaults in the payment of any part of the payment for the Seattle Bowl as established by the NCAA Post-Season Football Handbook that exists more than thirty (30) days after a demand by the Pac-10 to ASI;

(b) Failure of ASI to provide for national domestic television coverage for the Seattle Bowl Game;

(c) If ASI is adjudicated a bankrupt, files a petition for bankruptcy or for reorganization under the National Bankruptcy Act, makes an assignment for the benefit of creditors other than for use in acquiring a letter of credit to guarantee payment of the rights fees due under this Agreement, or a receiver is appointed for all or substantially all of its property, and the appointment, adjudication or petition is not vacated within fifteen (15) days or sixty (60) days in case of an involuntary petition; or

(d) If ASI materially breaches any provision of this Agreement other than (a), (b) or (c) above, or the Pac-10 materially breaches any provision of this Agreement, and said breach is not cured within thirty (30) days written notice to the address set forth herein.

Civil No. CV04-00204 DAE/KSC        EXHIBIT "85"        ASI-30-000305

40.  **Remedies Upon Default**

(a) Upon any default by ASI as set forth in paragraphs (a), (b) or (c) of paragraph 37 above, the Pac-10 shall have the right to:

(1) Terminate and cancel this Agreement and all rights conferred to ASI under this Agreement;

(2) Declare all sums payable under this Agreement for the immediately upcoming Game (or Game just completed), due and owing;

(b) In addition to the Pac-10's and ASI's other rights at law and in equity, either party may terminate this Agreement if the other party has materially breached this Agreement or committed an event of default and fails to cure such material breach within thirty (30) days after notice of the breach is sent by the non-breaching party, and fails to demonstrate to the notifying party that such material breach as been cured and did not cause irreparable harm.

(c) Each remedy provided is cumulative and shall be in addition to all other rights or remedies in this Agreement, or in law, equity or bankruptcy.

41.  **No Joint Venture**

The relationship created by this Agreement shall not be construed as to create any joint venture or partnership between the Pac-10 and ASI which would make one party liable for the debts, acts or omissions of the other party.

42.  **Modification**

This Agreement may only be modified in writing, signed by both the Pac-10 and ASI.

IN WITNESS WHEREOF, this Agreement has been duly executed, in duplicate, by the parties hereto, through their officers duly authorized, as of the date first mentioned in this instrument.

DATED:_____

"PAC-10"
PACIFIC-10 CONFERENCE

By:_____
DUDLEY B. WOODARD, President

By: _*/signature/*_
THOMAS C. HANSEN, Commissioner
9-14-01

(Signature page continued on page 13)

9-13-01 Seattle Bowl/Aloha Sports        12

DATED: September 25, 2001

"ASI"
ALOHA SPORTS INC.

By: _____
          President

By: _____
          Executive Director