ESPN, INC.
AGREEMENT

THIS AGREEMENT, dated as of May 1, 1998, is between Aloha Sports, Inc., d/b/a Bowl Games of Hawaii, a corporation organized under the laws of the State of Hawaii, with offices at 1110 University Avenue, Honolulu, Hawaii 96826-1508 ("BGH"), and ESPN, Inc., a Delaware corporation with offices at ESPN Plaza, Bristol, Connecticut 06010-7445 ("ESPN").

BGH hereby agrees to furnish ESPN certain services in connection with one or more programs to be produced by ESPN based on the events described below, all in accordance with the BASIC PROVISIONS set forth below and the attached GENERAL TERMS AND CONDITIONS.

BASIC PROVISIONS

I.  EVENTS

1998-2001 Oahu Bowl — Annual NCAA-sanctioned postseason college football bowl game (the "Event(s)").

II. DATES, STARTING TIMES AND SITE: The Date, Starting Time and Site of each Event shall be as follows:

Dates:          December 25 of each year except in 2000 when the Event shall be held on December 24 or such other Date determined by ESPN in its sole discretion after consultation with BGH.

Starting Time:  8:30 p.m. (EST), or such other time determined by ESPN in its sole discretion after consultation with BGH.. It is ESPN's present intent that the Event shall not be played at the same time a National Football League game is being played on any U.S. television network.

Site:           Aloha Stadium
                Honolulu, Hawaii
                BGH shall not change the Site of an Event without ESPN's prior approval.

Participating Teams: One of the participating teams in each Event shall be the fifth-choice team selection from the PAC 10 Conference. For the 1998 Event, the other participating team shall be the second-choice team from the Western Athletic Conference. For all subsequent Events to which this Agreement pertains, the other participating team shall be an at-large team selected by BGH after consultation with ESPN. ESPN shall have a prior right of approval of any Conference affiliation agreement of one year in duration or longer. BGH shall not select a team with six or fewer wins unless such team is approved by ESPN.

### III. ADDITIONAL TERMS

BGH represents and warrants that it has a binding agreement with the PAC 10 Conference to cause the fifth-choice PAC 10 team to appear in each of the 1998 through 2001 Events. If at any time during the term of this Agreement, including the Option (as defined below), the composition of the PAC 10 Conference changes by the deletion of one or more members, ESPN will have the right but not the obligation to cause BGH to negotiate a reduction in the consideration payable under this Agreement; if such negotiations fail to produce a mutually-satisfactory revised agreement, ESPN shall have the right to terminate this Agreement.

### IV. OPTION FOR FUTURE RIGHTS

ESPN shall have the exclusive, irrevocable option to acquire exclusive rights to produce and distribute Programs of the Events for 2002 and 2003 pursuant to all the terms and conditions of this Agreement (the "Option"). The Option shall be exercisable by ESPN's giving notice to BGH to that effect by April 15, 2002.

### V. CONSIDERATION

(a) In consideration for all the rights, materials and services to be supplied by BGH hereunder and the timely payment to ESPN of the amounts specified below, ESPN shall afford BGH two minutes of national commercial time in ESPN's first two distributions of the Program of each Event throughout the United States. BGH may provide up to one minute of such time for the Title Sponsor of the affected Event, in order to reduce pro rata the Title Sponsor Ad Time described below that a Title Sponsor must purchase in order to receive Title Sponsorship benefits on a Program pursuant to subsection (b) below.

(b) (i) As further consideration, ESPN also shall sell to BGH and BGH shall purchase from ESPN three minutes of national commercial time in such distribution by ESPN in the Program of each Event throughout the United States for promotion of the products and services of any Title Sponsor of an applicable Event (the "Title Sponsor Ad Time"), subject to the terms and conditions below, at the following prices payable to ESPN (net of any agency commissions, which as between ESPN and BGH will be the sole responsibility of BGH):

(A) 1998 Event - $100,000 ($16,667 per 30-second unit)
(B) 1999 Event - $106,200 ($17,700 per unit)
(C) 2000 Event - $112,800 ($18,800 per unit)
(D) 2001 Event - $119,400 ($19,900 per unit)
(E) 2002 Event - $126,000 ($21,000 per unit) (Option)
(F) 2003 Event - $133,800 ($22,300 per unit) (Option)

(ii) Each Title Sponsor must be submitted to ESPN for approval on or before August 1 of the applicable Event, and ESPN shall exercise that right of approval in good faith. If BGH does not submit a Title Sponsor for ESPN's approval and/or ESPN in good faith does not approve such Title Sponsor, the Title Sponsor Ad Time shall return to ESPN's inventory of commercial time for the applicable Program of each Event and ESPN shall have the right to sell such time to advertisers it

solicits and to retain all proceeds from such sales. Notwithstanding the foregoing, ESPN will consider in good faith any request by BGH to continue its efforts to secure a Title Sponsor beyond the August 1 deadline. For any title sponsor committing to all six Title Sponsorship Units for a particular Event, ESPN will afford to that sponsor reasonable category exclusivity within the national commercial time continued in the affected Program and customary presenting-sponsorship identification, unless ESPN has already entered into a prior agreement with another company in the same business category for the affected Program. BGH hereby warrants that Jeep shall be the Title Sponsor of the 1998 Event.

(iii)   The advertising time specified in subparagraphs (a) and (b) above is to be used for the promotion of the products and services of advertisers solicited by BGH in accordance with and subject to the terms and conditions set forth in Exhibit I.

(c)   ESPN shall pay to BGH the following net amounts (the "Rights Fee"), each of which must be paid within thirty days after the applicable Event is played (all payments in respect of 2002 and 2003 Events are subject to ESPN exercising its Option):

(i)    1998 Event: $430,000.00
(ii)   1999 Event: $360,000.00
(iii)  2000 Event: $375,000.00
(iv)   2001 Event: $400,000.00
(v)    2002 Event: $425,000.00 (Option)
(vi)   2003 Event: $430,000.00 (Option)

## VI.   FEATURES

(a)   In each original Program, ESPN will undertake commercially reasonable efforts, at BGH's request, to include in each such Program a three-minute halftime feature on the applicable Event and the Honolulu, Hawaii area (the "Event Feature(s)"). BGH will be solely responsible for all production of all Event Features and for securing all necessary rights to allow its distribution by ESPN in accordance with all of ESPN's distribution rights under this Agreement as stated in section 3 below. BGH will provide ESPN all Event Features at no cost. ESPN will have the absolute right of approval in its sole discretion of all elements of all Event Features and reserves the right not to telecast any Event Feature that it believes to be inappropriate, illegal, in bad taste, of poor quality or otherwise unsuitable for inclusion in a Program.

(b)   During the Program of each Event, ESPN will use commercially reasonable efforts to conduct a brief interview with a person designated by BGH. The interviewee must be a person of national prominence, an officer of BGH, a local political figure or a person affiliated with the Title Sponsor, but in each case BGH will consult with ESPN regarding the identity of such interviewee and ESPN reserves the right in its sole discretion to approve or disapprove any such interviewee.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

ALOHA SPORTS, INC.
d/b/a Bowl Games of Hawaii

By: _____ 9/2/98
Marcia Cherner Klompus
Executive Director

ESPN, INC.

By: _____
John Wildhack
Senior Vice President, Programming

## GENERAL TERMS AND CONDITIONS

1. **THE EVENT**

    (a)  As used herein, the term "Event" shall mean a sports event named in Paragraph I of the BASIC PROVISIONS and all events and activities taking place at the Site on the Dates of the Event. The Event shall be staged and conducted on the Dates at the Site indicated in the BASIC PROVISIONS, and if live delivery of the Programs is specified in the BASIC PROVISIONS, at the Starting Times indicated in the BASIC PROVISIONS.

    (b)  BGH shall be solely responsible for all arrangements (including any compensation) with the owner of the Site for the staging of each Event and all participants and any officials involved in the Event, and such arrangements shall accord to ESPN all rights and consents required or contemplated with respect to ESPN's rights hereunder, including but not limited to causing ESPN to be provided at the Site with the necessary electrical power and lighting requirements for a first-class television program for all of its production needs at no charge. BGH shall supply ESPN suitable space for such persons. BGH shall: (i) consult and coordinate with ESPN's producer prior to the Event to integrate the Event format with ESPN's commercial format, and (ii) appoint and compensate a liaison officer to be responsible for and cooperate in calling time-outs or other structured interruptions so that ESPN's commercial format is satisfied and commercial and promotional announcements are properly spaced. BGH shall use its best efforts to make available to ESPN such participants, officials and other persons connected with the Events as ESPN may request for purposes of interviews and discussion.

    (c)  BGH shall furnish ESPN 25 complimentary tickets to each Event situated between the 30-yard lines in the lower deck of the Site. ESPN also will have the right to purchase up to 75 additional similarly-situated tickets to each Event.

2. **THE PROGRAMS**

    (a)  As used herein, the term "Program" shall mean an audio-video program based on or including the Events or any portion thereof.

    (b)  Halftimes of the Events shall be a maximum of twenty-three minutes in length.

    (c)  BGH shall place a number of ESPN banners at the Site in such a manner and location that such banners will be reasonably and readily apparent to both the spectators at the Site and the viewers watching the Programs as distributed by ESPN.

    (d)  BGH represents and warrants that it will not cause, allow or acquiesce to the presence at the Site of any sign, billboard or other display or announcement for any product or service in a manner that tends to be visible or audible on any Program, except for advertising that is affixed to locations at the Site other than the area on which the Event occurs (i.e., stadium billboards targeted to on-Site spectators and not to the television audience) or which is approved by ESPN in writing prior to the Event. Notwithstanding the foregoing, ESPN recognizes that BGH has certain local sponsors which may hang banners at locations in Aloha Stadium for the Event, including without limitation on the field-level retaining walls and on stadium billboards; such banners must not be unduly intrusive in nature and

cannot conflict with ESPN advertisers on the Programs, so all such banners are subject to ESPN's prior review and approval.

3. **DISTRIBUTION AND EXHIBITION**

   (a) BGH hereby grants to ESPN the exclusive right in perpetuity to distribute, transmit, exhibit, license, advertise, promote, publicize and perform (hereinafter "distribute") the Events as incorporated by ESPN in each Program (the "Programs") and any constituent elements thereof throughout the universe by any and all means, uses, and media now known or hereafter developed and without limitation as to the number of exhibitions.

   (b) ESPN shall have the right to distribute any Program on a live basis and ESPN may make a recording of such Program for distribution on a delayed basis. As used herein, the term "recording" shall mean and include any recording by tape, wire, film, disc, cassette or any other similar or dissimilar method of recording television programs, whether now known or hereafter developed. ESPN shall be the sole owner of all Programs and any recordings and shall have the right to affix to each recording a notice designating ESPN as owner of the copyright of the Program embodied thereon. ESPN (and such parties as it may authorize) may use such recordings for:

   (i) distribution of the Programs;

   (ii) file reference, sales and publicity purposes; and

   (iii) distribution of excerpts of the Programs as part of television news and for highlights purposes in other programs.

   (c) Subject to ESPN's being prevented for the bona fide reasons stated below, ESPN shall distribute each Program on a live basis at the time indicated in the BASIC PROVISIONS. ESPN may interrupt or delay the commencement of its coverage of an Event because of "force majeur," coverage of breaking news or other events of such magnitude, consistent with ESPN's past practices in such regard. For purposes of this Agreement, "force majeur" means any act of God, inevitable accident, strike or other labor dispute, fire, riot or civil commotion, government action or decree, inclement weather, failure of technical, production or television equipment, or for any other reason beyond the control of BGH or ESPN.

   (d) BGH shall not, without the written consent of ESPN which consent shall not be unreasonably withheld, cause, authorize, license or permit any exhibition or distribution of any videotape or film footage of the Events or of the Programs or any portion thereof in any form by any means, uses or media whatsoever other than by ESPN hereunder.

   (e) ESPN's initial live distribution of any Program comprised of coverage of all or substantially all of an Event shall be blacked-out on the island of Oahu if less than ninety percent (90%) of the tickets available for public sale to that Event are not sold at least seventy-two (72) hours prior to the scheduled kickoff of that Event.



4. PROMOTION AND PUBLICITY

ESPN shall have the right, and may grant others the right, to reproduce, print, publish or disseminate in any medium, the name and likeness and voice of each person appearing in or connected with the Programs and biographical material concerning such persons as well as BGH's name, trademarks, service marks and logos, and the names of and any trademarks, service marks and logos associated with the Events and the Sites for information purposes and to advertise, promote, publicize and distribute the Programs and any ESPN Service, but not as a direct endorsement of any product or other services. Notwithstanding the foregoing, ESPN represents and warrants that all of the various names, trademarks and service marks, and all of the various names, trademarks and service marks directly related to the Oahu Bowl and the Site (collectively, "Symbols") shall remain the exclusive property of BGH. ESPN further represents and warrants that any use of the Symbols shall not create any proprietary rights in the Symbols in favor of ESPN.

5. MUSIC

At least fourteen days before each Event, BGH shall send to ESPN a list naming all musical compositions scheduled to be played during the Event which list shall include as to each composition the name of the composer, publisher, copyright holder and performing rights owner. If ESPN notifies BGH that it is unable to clear any such composition for use in connection with its distribution of the Program of the Event, such composition shall not be played.

6. FIRST NEGOTIATION AND FIRST REFUSAL

(a) If ESPN has exercised its Option in Section III, above, of the BASIC PROVISION, BGH shall negotiate exclusively with ESPN for a period of sixty days (the "Negotiating Period"), commencing on a date selected by ESPN (but not later than April 15, 2004 or if ESPN has not exercised the Option provided in Section III, above, not later than April 1, 2002) with respect to the acquisition by ESPN for one or more years of rights to the Events. For this purpose, the term "Events" shall include any event which is a successor or substitute for the Events named in Paragraph I of the BASIC PROVISIONS or which is otherwise equivalent or related thereto.

(b) If ESPN and BGH have not reached agreement by the end of the Negotiating Period, BGH shall make a written offer (the "Offer") within three days after the end of the Negotiating Period to ESPN of the monetary consideration on which it is willing to license such rights to ESPN. With the exception of monetary consideration, BGH's Offer shall not contain any terms or conditions which are different from those contained in this Agreement ("Nonconforming Terms"), other than as permitted by subsection 7(c)(iv), below. If ESPN does not accept the Offer within seven days of its receipt of the Offer from BGH, BGH may enter into an agreement with a third party with respect to such rights but not in any instance without first offering to ESPN the same terms as offered to the third party (the "Reoffer"). ESPN shall accept or reject a Reoffer by BGH no later than three days from its receipt of the Reoffer from BGH.

(c) The foregoing is subject to the following conditions:

    (i)    BGH shall not discuss the rights contemplated under this Section with any third party prior to the commencement of or during the Negotiating Period and any discussion between BGH and third parties following the end of the Negotiating Period shall be held only in accordance with the terms of this section;

    (ii)    ESPN shall not be required to negotiate with BGH concerning, or to consider any offer conditioned upon, ESPN's acquisition of rights to any event or properties other than rights to the Events;

    (iii)    The parties shall act at all times in complete good faith consistent with the intent and spirit of this entire Agreement;

    (iv)    Neither an Offer nor Reoffer shall be for a period of less than one year;

    (v)    The Offer required to be made by BGH pursuant to an agreement formed by ESPN's acceptance of an Offer under this Section 7 may include Nonconforming Terms; and

    (vi)    Upon acceptance of an Offer or Reoffer, ESPN shall not be required to comply with any term or condition which imposes on ESPN any obligation with which ESPN cannot comply because of impossibility or prior contractual commitment. ESPN shall notify BGH of any such terms or conditions as promptly as possible.

    (d)    BGH acknowledges that this Agreement's scope is limited to its specific subject matter and it does not entitle either BGH or ESPN to any future rights or expectations with respect to each other except as explicitly provided herein.

7. **WARRANTIES**

    (a)    BGH warrants and represents to ESPN that:

    (i)    (A) it is free to enter into and perform this Agreement; (B) it has all rights necessary to its grant of rights to ESPN hereunder; (C) the rights ESPN has acquired, and its use of such rights, will not infringe upon or violate the rights of any third party; (D) it will not do anything which might tend to interfere with or impair the rights which ESPN has acquired in this Agreement; (E) each Event is sanctioned by such sports organizations and/or authorities as have jurisdiction over the Event and the Event will be conducted in accordance with all applicable rules and regulations of such organizations and/or authorities; and (F) a representative field of the top college athletes in the applicable sport will participate in the Event;

    (ii)    BGH further represents and warrants to ESPN that: (A) its payments to the participating teams in each Event will be consistent with all applicable NCAA regulations; and (B) in connection with its production of the Event Features, it will obtain all necessary rights and clearances to allow ESPN to distribute such Features in accordance with all of its distribution rights stated in section 3 below, and BGH will assign to ESPN all right title and interest in the Event Features, including all copyrights thereto.



(b) BGH acknowledges that ESPN's rights in this Agreement are valuable and unique. BGH warrants that it will not authorize or permit any other exhibition or distribution of the Events by any television medium in any manner or by any means whatsoever and that it will not grant any rights inconsistent with the rights granted ESPN herein. BGH will not stage events or competition essentially duplicating the Events for television production, distribution or recording by any third party.

(c) ESPN and BGH further represent, warrant and covenant to each other that:

(i) Each has the right to enter into this Agreement and perform all of their respective obligations pursuant to this Agreement;

(ii) ESPN is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, and BGH is a corporation duly organized, validly existing and in good standing under the laws of the State of Hawaii;

(iii) This Agreement has been duly authorized, executed and delivered by each party and constitutes a valid and binding obligation of the parties, enforceable against them in accordance with its terms;

(iv) Neither the execution, delivery or performance of this Agreement, nor the consummation of the transactions contemplated hereby, will constitute a default under or cause or result in any breach of, or conflict with, any provision of either party's Articles of Incorporation or Bylaws or any order decree or ruling of any court or administrative agency or any contract agreement, lease, commitment, license, franchise, permit, authorization or concession to which either party is a party or by which it or its assets are bound or subject, or constitute an event which with notice, lapse of time or both, would result in any such breach, violation or default;

(v) At all times during the term of this Agreement, all of the parties' respective representations and warranties contained in this Section will be true and correct in all aspects.

8. INDEMNIFICATION

(a) BGH will indemnify, defend and hold ESPN harmless from any and all claims, costs, liabilities, judgments, expenses or damages (including reasonable attorneys' fees) arising out of:

(i) The licensed use of the elements furnished by BGH for the exercise of rights granted to ESPN, or

(ii) Acts or omissions of BGH, its employees, agents or other representatives related to the transaction contemplated thereby.

(b) ESPN will indemnify, defend and hold BGH harmless from any and all claims, costs, liabilities, judgments, expenses or damages (including reasonable attorneys' fees) arising out of:

(i) The licensed use of the elements furnished by ESPN for the exercise of rights granted to BGH, or

(ii) Acts or omissions of ESPN, its employees, agents or other representatives related to the transaction contemplated thereby.

(c) In any case in which indemnification is sought hereunder:

(i) The party seeking indemnification shall promptly notify the other of any claim or litigation to which the indemnification relates; and

(ii) The party seeking indemnification shall afford the indemnifying party the opportunity to participate in and, at the indemnifying party's option, fully control any compromise, settlement, litigation or other resolution or disposition of such claim or litigation, but the indemnifying party must not make any agreement that prospectively compromises or limits the other party's substantive rights without such party's prior, written consent (which shall not be unreasonably withheld); in no case shall any such compromise or limitation implicate rights, obligations or property beyond the subject matter of this Agreement.

(d) BGH warrants and represents that it has, or will secure, prior to delivery of the Programs and will maintain for each respective Event:

(i) Standard errors and omissions insurance (also known as media or broadcasters' liability insurance) covering the Programs and BGH's obligations to ESPN with respect thereto. Such insurance shall have commercially reasonable limits for damages and legal defense costs and fees for any single party's claim arising out of a single occurrence and for all claims arising out of a single occurrence;

(ii) Workers' compensation coverage covering all persons employed by it in connection with the Programs which is sufficient under the laws of the states in which such persons render services with respect to the Programs;

(iii) Public liability insurance having a limit of at least $1,000,000.00 per occurrence for personal injuries; and

(iv) Property damage insurance having a limit of at least $1,000,000.00.

(e) ESPN warrants and represents that it has, or will secure, prior to delivery of the Programs and will maintain for each respective Event:

(i) Standard errors and omissions insurance (also known as media or broadcasters' liability insurance) covering the Programs and BGH's obligations to ESPN with respect thereto. Such insurance shall have commercially reasonable limits for damages and legal defense costs and fees for any single party's claim arising out of a single occurrence and for all claims arising out of a single occurrence;

(ii) Workers' compensation coverage covering all persons employed by it in connection with the Programs which is sufficient under the laws of the states in which such persons render services with respect to the Programs;

(iii) Public liability insurance having a limit of at least $1,000,000.00 per occurrence for personal injuries; and

(iv) Property damage insurance having a limit of at least $1,000,000.00.

All such insurance shall be issued by reputable insurers rated A or better by A.M. Best and Co. and shall cover ESPN, its parent and affiliated companies, its licensees, and affiliates exhibiting or scheduled to exhibit the Programs, the sponsors of the Programs, their advertising agencies, and the officers, directors, agents, employees, and stockholders of all the foregoing. BGH shall provide ESPN with evidence of such insurance satisfactory to ESPN upon ESPN's request.

9. **INDEPENDENT CONTRACTORS**

BGH and ESPN are independent contractors with respect to each other, and nothing herein shall create any association, partnership, joint venture or agency relationship between them. All persons employed by BGH in connection with its performance hereunder shall be BGH's employees and BGH shall be fully responsible for them, except as otherwise specifically and explicitly provided herein. As between ESPN and BGH, BGH shall have no responsibility for all of the persons employed or retained by ESPN in connection with its performance hereunder.

10. **FINANCIAL DISCLOSURE**

In conformity with Section 507 of the U.S. Federal Communications Act concerning broadcasting matters and disclosure required thereunder, BGH warrants and represents that it has not accepted or agreed to accept, and will not permit its employees, agents, representatives, contractors, or affiliate entities to accept any monies, services, or other consideration for the inclusion of any commercial material or matter in or as part of the Programs.

11. **MISCELLANEOUS**

(a) All notices and other communications from either party to the other hereunder shall, unless otherwise specifically provided herein, be given in writing at the respective addresses of BGH and ESPN set forth above, unless either party at any time or times designates another address for itself by notifying the other party thereof by certified mail, in which case all notices to such party shall thereafter be given at its most recently so designated address. Notice shall be deemed given: when delivered in person, or on the date of dispatch by commercial courier or private messenger; upon deposit in the United States mails, postage prepaid; on delivery of a telegram to a telegraph office with charges therefor prepaid or to be billed to the sender thereof; or on the sending of a private wire, including by facsimile machine or by telex. Notice shall be deemed received when given except that notice given by commercial courier or private messenger shall be deemed received when delivered and notice given by mail shall be deemed received five days after deposit in the United States mails, postage prepaid.

(b) Each party hereto shall execute any and all further documents or amendments which either party hereto may deem necessary and proper to carry out the purposes of this Agreement.

(c) This Agreement contains the full and complete understanding of the parties hereto, supersedes all prior agreements and understandings whether written or oral pertaining hereto, and cannot

be modified except by a written instrument signed by each party hereto. The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning and not strictly for or against any of the parties.

(d)   The descriptive headings of the several sections and paragraphs of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

(e)   This Agreement is to be governed by and construed in accordance with the laws of the State of Connecticut applicable to contracts entered into and to be fully performed therein. The parties expressly agree and consent to exclusive jurisdiction and venue in Hartford County, Connecticut for resolution or determination of any action or proceeding arising out of this Agreement.

(f)   Neither party shall assign any of its rights or obligations hereunder without the prior written consent of the other, and any purported assignment without such prior written consent shall be null and void and of no force and effect, but ESPN may assign this Agreement to a company controlling, controlled by, or under common control with it to carry out its network television business. Further, ESPN's exercise of its rights granted by this Agreement by means of license or sublicense shall not be deemed to be a prohibited assignment. Notwithstanding the foregoing, BGH may assign to a duly-chartered commercial bank those rights in and to this Agreement necessary for BGH securing the letter of credit required by the NCAA to secure certification of the Events.

(g)   Any provisions herein found by a court to be void or unenforceable shall not affect the validity or enforceability of any other provisions.

(h)   If any action, whether at law or in equity (including, without limitation, an action for declaratory relief) is brought to enforce or interpret any provisions of this Agreement, the prevailing party in such action shall be entitled to reasonable attorneys' fees and costs therefore, which fees and costs may be set by the court in the same action or in a separate action brought for such purpose.

# EXHIBIT I

## ADVERTISING REGULATIONS

BGH shall cooperate with ESPN in the distributing of commercial material of the highest possible standards of excellence and, for this purpose, shall observe the following regulations in the preparation, writing and broadcasting of commercials.

There shall be:

(i) No false or unwarranted claims for any product or service.

(ii) No advertising of any habit-forming drugs, tobacco products, or distilled liquor.

(iii) No infringement of another advertiser's rights through plagiarism or unfair imitation of either program idea or copy, or any other unfair competition.

(iv) No disparagement of competitors or competitive products.

(v) No material constituting or relating to a lottery, a contest of any kind in which the public is unfairly treated or any enterprise, service or product which would tend to encourage, and abet, assist, facilitate or promote illegal or legal gambling.

(vi) No commercial or material that is in whole or in part defamatory, obscene, profane, vulgar, repulsive or offensive, either in theme or in treatment.

(vii) No ambiguous statements or representations that may be misleading to the audience.

(viii) No appeal for funds.

(ix) No testimonials that cannot be authenticated.

(x) No continuity or visual material that describes or depicts repellently any internal bodily functions or symptomatic results of internal disturbances, and no reference to matters that are not considered acceptable topics in social groups.

(xi) No commercial that may, in the opinion of ESPN, be injurious or prejudicial to the interests of the public, ESPN or honest advertising and reputable business in general.

(xii) No commercial which contains or uses any element of intellectual property without the owner's consent to such use, including but not limited to music master, mechanical, performance and synchronization rights.

In using such commercial time, BGH shall:



(i) Consult regularly with the individual in ESPN's Advertising Sales Department designated by ESPN on BGH's plans and actions taken with respect to such time;

(ii) Not, without ESPN's prior approval, sell or solicit the sale of advertising time in the ESPN Service to any beer advertiser or to any advertiser to which ESPN is itself either currently furnishing advertising time or attempting to sell such time, BGH hereby acknowledging that the advertisers listed on Schedule A attached hereto are ESPN's current or prospective advertisers and will not be solicited by BGH; ESPN may add to such list at any time and from time to time by so notifying BGH;

(iii) Promptly advise ESPN of each completed sale, specify the name of the advertiser, the product or service to be advertised and such other relevant information as ESPN may request, and furnish ESPN, no later than five business days before the date of the distribution in question, with the videotapes and other requisite materials for airing BGH's commercials according to the guidelines contained in ESPN's commercial continuity instructions attached hereto; and

(iv) Observe ESPN's advertising regulations attached hereto as Exhibit I.

ESPN may refuse to distribute any commercial or any element thereof that, in ESPN's opinion,

(i) Does not maintain an artistic and technical quality creditable to ESPN;

(ii) Fails to conform to the advertising regulations attached hereto or ESPN's general practices and formats regarding commercials, as either may be modified from time to time; or

(iii) May violate any rights of any person, firm or corporation.

