**Pro Sports & Entertainment, Inc.**
**10 East Yananoli Street,**
**Santa Barbara, CA 93101**

Thursday, February 20, 2003

Mr. Terry Daw
Aloha Sports, Inc.
5251 Papai Street
Honolulu, HI 96821
**Re:    Irrevocable Binding Letter of Intent**

Dear Terry:

Based on our recent discussions and the representations that you have made to us describing ASI Acquisitions Inc., its subsidiary Aloha Sports Inc. and properties which include, but are not limited to, Aloha Bowl, Oahu Bowl and Seattle Bowl (which shall hereinafter be collectively referred to as the **"Company"** or the **"Acquisition"**). regarding the present and proposed business activities of the Company and the Company's operations, financial condition and capital structure, this irrevocable binding letter of intent (the **"Letter"**) will confirm in principle the intention of Pro Sports and Entertainment, Inc. (the **"Acquirer"**), subject to the terms and conditions in this Letter, to acquire 100% of the stock of the Company which is held by Terry LeRoy Daw and Richard Banner the shareholders of ASI Acquisitions Inc.

Subject to the preparation, execution and performance of a definitive written purchase agreement (the **"Acquisition Agreement"**) between the Company and the Acquirer, the parties hereby agree to the following terms regarding the Acquisition:

1.    **Form of Acquisition.** The Acquisition Agreement will provide for the acquisition of the stock of the company by the Acquirer in consideration of $2,031,000 Dollars (the **"Purchase Price"**), payable in stock of the Acquirer as detailed in Exhibit "A".

2.    **Conduct of Business Post-Closing.** Following the closing of the Acquisition (the **"Closing"**), all transactions conducted and/or negotiated by the Company shall be conducted and/or negotiated by the Acquirer.

3.    **Lease.** This Letter is contingent on the fact that the Company has a valid lease with First and Goal for the use of Seahawks stadium.

4.    **Employment Agreements.** Effective upon Closing, the Acquirer may enter into employment agreements with key employees of the Company, which agreements shall provide for such individuals to perform services similar to the services they are performing as of the Closing at compensation rates to be agreed upon between the Acquirer and such individuals.

5.    **"Acquired Assets".** The Acquired Assets means all right, title and interest in and to all of the assets of the Company, including all of its (i) tangible personal property (such as inventories of raw materials, supplies, packaging goods, and finished goods, equipment,

manufactured and purchased parts, machinery, goods in process, furniture, automobiles, trucks, tractors, trailers and tools if any (ii) agreements, contracts, indentures, mortgages, instruments, Security Interests, guaranties, other similar arrangements, and rights there under, (iii) franchises, approvals, permits, licenses, orders, registrations, certificates, variances, exemptions and similar rights obtained from government and non government and governmental agencies and non governmental agencies (the "Permits), (iv) Intellectual Property, goodwill associated therewith, licenses and sublicenses granted and obtained with respect thereto, and rights there under, remedies against infringements thereof, and rights to protection of interests therein under the laws of all jurisdictions, all trademarks, service marks, web sites, domain names, trade dress, logos, trade names, and corporate names, together with all translations, adaptations, derivations, and combinations thereof and including all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith (v) real property, fixtures, improvements and fittings thereon, leaseholds and subleases therein, and easements, rights-of-way, and other appurtenants thereto, (vi) leases, subleases, and rights there under, (vii) prepayments, prepaid expenses, and deferred items, causes of action, chooses in action, rights of recovery, rights of set off, and rights of recoupment , (viii) accounts, notes and other receivables (ix) securities (such as the capital stock in any subsidiary), (x) books, records, ledgers, files, documents, correspondence, lists, plats, architectural plans, drawings, and specifications, creative materials, advertising and promotional materials, studies, reports, and other printed or written materials, and (xii) cash.

     **6.**   **"Assumed Liabilities"**. The Acquirer will assume: (i) all trade account payables and accrued expenses of Company which arose in the ordinary course of business and are set forth in the most recent balance sheet of the Company set forth herein in Exhibit "B", (ii) all trade account payables and accrued expenses of PSEI which have arisen after the most recent fiscal month and in the ordinary course of business, (iii) all obligations of PSEI under the agreements, contracts, lease, licenses, and other arrangements referred to in the definition of Acquired Assets, either (A) to furnish goods, services, and other non-Cash benefits to another party after the Closing or (B) to pay for goods, services, and other non-Cash benefits that another Party will furnish to it after the Closing, and (iv) all other Liabilities and obligations of PSEI set forth in the Disclosure Schedule of PSEI attached hereto as Exhibit "B", under an express statement to the effect that the definition of assumed liabilities will include the liabilities and obligations so disclosed, *provided however,* that the assumed Liabilities shall not include (i) any liability of Company for unpaid taxes or for income, transfer, sales, use and other taxes arising in connection with the consummation of the transactions contemplated hereby, (ii) any obligation of the Company to indemnify Any Person (including any of the stockholders) by reason of the fact that such Person was a director, officer, employee, or agent of the Company or was serving at the request of any such entity as a partner, trustee, director, officer, employee, or agent of another entity (whether such indemnification is for judgments, damages, penalties, fines, costs, amounts paid in settlement, losses, expenses, or otherwise and whether such indemnification is pursuant to any statute, charter document, bylaw, agreement or otherwise, (iii) all liabilities and obligations relating to funded indebtedness of the Company or its subsidiaries, (iv) any Liability of the Company for costs and expensed incurred in connection with the Agreement and the transactions contemplated hereby, or (v) any Liability or obligation of the Company under this Agreement except as noted on Exhibit "B".

     **7.**   **Representations.** The Company hereby represent and warrant that they (i) hold all right and title to and interest in the Assets and that they have not entered into any agreement or letter of intent, which is presently in effect, with any person with respect to the sale, transfer or

2

*Initial* _____  _____

other disposition of the Assets and (ii) have not otherwise sold, transferred, pledged, hypothecated, encumbered, or otherwise alienated any right or interest in and to the Assets except as noted in Exhibit "C" in the Release of All Claims to Ownership by Brian Dimartino, Leonard Klompus, Richard Schaller and Michael Long.

    8.    **Acquisition Agreement Contemplated; Binding Effect of this Letter.** It is understood that this Letter is a letter and statement of binding intent subject to a definitive binding stock purchase agreement. The parties will exclusively negotiate in good faith with a view to preparing and executing the Acquisition Agreement, which shall contain customary representations and warranties for stock purchase transactions, on or before [May 30, 2003]. Execution of the Acquisition Agreement and the completion of the Acquisition will be subject to NCAA Certification of the (Seattle Bowl) (or subject to a NCAA Conditional Certification of the (Seattle Bowl). In the case of a Conditional Certification, Acquirer shall notify Terry LeRoy Daw and Richard Banner within 10 business days of notice from the NCAA, of their intent to move forward acquisition in which case, this Letter becomes binding) and the completion of a customary due diligence investigation of the Company that is satisfactory to Acquirer in its sole discretion. The Company agrees to afford to Acquirer and its representatives, including accountants and attorneys, full and complete access to all of the Company' properties, documents, contracts, books, records and personnel. If Acquisition fails to complete sale to Acquirer and negotiates sale with other party during the term of this Agreement, Acquisition will be responsible for all material cost of due diligence including but not limited to accounting, legal and consulting.

    9.    **Actions Prior to Closing of Acquisition.** From the date this Letter is executed by the Company until the Closing or this Letter is otherwise superseded or terminated, the Company will carry on their businesses as presently conducted and only in the usual and ordinary course, and not enter into any material contracts or other transactions out of the ordinary course of business without the prior written approval of Acquirer. Additionally, the Company will use their best efforts to preserve their business organizations intact, to keep available their employees and to preserve and enhance their relationships with clients and those having business relations with the Company.

    10.    **Assignment.** This Letter shall not be assignable by any party without the consent of the others, which consent shall not be unreasonably withheld. This Letter is for the benefit of and shall be binding upon the parties' successors and permitted assigns. No third party is intended as a beneficiary of, or shall be entitled to enforce or claim any interest in or right under, this Letter.

    11.    **Confidentiality.** The parties have executed reciprocal confidentiality agreements; each dated March 1, 2003, with respect to the confidentiality of information provided by the parties to each other.

    12.    **Expenses.** Each party to this Letter shall bear its own expenses in connection with the preparation and negotiation of this Letter and the consummation of the transactions contemplated hereby.

    13.    **Termination.** If the parties do not enter into the Acquisition Agreement by [June 31, 2003], the agreements in this Letter shall terminate, and this Letter shall have no further force and effect (except as to the matters set forth in Paragraph 12 hereof), and no party hereto shall

have any further obligation or liability to any other party arising out of this Letter or the matters herein.

      **14.**    **Counterparts.**  This Letter may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement.  This Letter may be executed by any party by delivery of a facsimile signature, which signature shall have the same force and effect as an original signature.  Any party which delivers a facsimile signature shall promptly thereafter deliver an originally executed signature to the other parties; provided, however, that the failure to deliver an original signature page shall not affect the validity of any signature delivered by facsimile.

      **15.**    **Entire Agreement; Amendment.**  This Letter supersedes all prior purchase agreements.  Any changes or subsequent agreements must be in writing and agreed upon in writing by all parties hereto.

      If the foregoing is acceptable to the Company and is agreed to by the Company, please so indicate by signing the enclosed copy of this Letter in the spaces provided and returning it to me.

Very truly yours,
Pro Sports & Entertainment, Inc.

By:_____
Paul H. Feller, President & CEO

**Approved and agreed:**

ASI Acquisitions Inc.

Shareholder

By: _Terry LeRoy Daw_
Terry LeRoy Daw, President

By:_____

Richard Banner

Aloha Sports Inc.

Shareholder

By: _Terry LeRoy Daw_

By: _Terry LeRoy Daw_

Terry LeRoy Daw

4

*Initial* _____ _____

**EXHIBIT "95"**

ASI-06-001272

**EXHIBIT "A"**
**TERMS**

1. Purchase Price: Two Million, and Thirty One Thousand dollars ($2,031,000). To be paid out after NCAA re-certification of the Seattle Bowl by Acquirer in the following order:
   a. Cash:

| Current Liabilities | | Payment Date |
|---|---|---|
| Accounts Payable - Oregon | 207,159.60 | Upon NCAA re-Certification |
| Accounts Payable - Wake Forest | 166,869.50 | Upon NCAA re-Certification |
| Accrued Payroll | 60,000.00 | Upon NCAA re-Certification |
| Accrued penalties and interest | 7,700.00 | tbd |
| Note payable - BOH | 24,963.04 | tbd |
| Note payable - MWC | 250,000.00 | Upon NCAA re-Certification |
| Note payable - WAC | 25,000.00 | Upon NCAA re-Certification |
| Payroll Liabilities | 38,289.74 | tbd |
| Previous Owners | 100,000 | Within 30 days of NCAA Certification |
| **Total Other Current Liabilities** | 879,971.88 | |

   b. Shares: One Million One Hundred Fifty One Thousand Twenty Eight Dollars and Twelve Cents ($1,151,028.12) of PSEI Equity based on selling price (defined as last selling price of shares, management evaluation as related to last selling price of shares and most subsequent transaction or by public market) at time of transfer:
      1. 25% at time of Certification.
      2. 25% July 31, 2003
      3. 25% October 31, 2003
      4. 25% January 31, 2003

2. This will be offset by any additional liabilities, changes in assets or previously incurred expenses that have not been disclosed or exceeded the amount that was disclosed at time of disclosure of Balance Sheet (March, 19, 2003). The Acquirer is not responsible for the following liabilities: (Deposits for pending stock issue of $119,000.00, Note Payable Rohlfing Kids 108,000.00, Note Payable Terry Daw 107,500.00, Note Payable Weston Daw $15,000.00, Note Payable Daw 4,854.45, Interest Payable –Rolfing Kids 18,433.99, Interest Payable – S/H, and Note Payables to DiMartino, Klompus, Long, and Schaller have been reduced to a one time payout of $100,000.00 per Exhibit "C".

3. Consultancy Agreement: PSEI agrees to pay in advance a consulting fee based on $70. pre hour to Mr. Terry Daw of 70,000. to be paid out as follows:
   a. $23,334. at time of re-certification by the NCAA.
   b. $23,333. at 45 days from re-certification by the NCAA.
   c. $23,333. at 90 days from re-certification by the NCAA.

5

*Initial* TD

# EXHIBIT "B"
## BALANCE SHEET

|  | Apr 25, 03 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| Other Current Assets | |
| Investment in Aloha Sports, Inc | 1,542,335.63 |
| Total Other Current Assets | 1,542,335.63 |
| **Total Current Assets** | 1,542,335.63 |
| **Other Assets** | |
| Accumulated Amortization-Org Co | -90.00 |
| Organizational Costs | 150.00 |
| Total Other Assets | 60.00 |
| **TOTAL ASSETS** | 1,542,395.63 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| Other Current Liabilities | |
| Interest Payable-Rolhfing kids | 18,433.99 |
| Interest Payable - S/H | 18,348.63 |
| Note Payable-DiMartino | 104,351.54 |
| Note Payable-Klompus | 313,056.17 |
| Note Payable-Long | 104,353.03 |
| Note Payable-Rohlfing Kids | 108,000.00 |
| Note Payable-Schaller | 104,351.55 |
| Note Payable-Terry Daw | 107,500.00 |
| Total Other Current Liabilities | 878,394.91 |
| **Total Current Liabilities** | 878,394.91 |
| **Long Term Liabilities** | |
| Due to S/H | 670.00 |
| Due to Sub | 601,591.43 |
| Total Long Term Liabilities | 602,261.43 |
| **Total Liabilities** | 1,480,656.34 |
| **Equity** | |
| Capital Stock | 1,000.00 |
| Retained Earnings | 60,739.29 |
| **Total Equity** | 61,739.29 |
| **TOTAL LIABILITIES & EQUITY** | 1,542,395.63 |

6

EXHIBIT "95"

*Initial* ___

ASI-06-001274

**Aloha Sports Balance Sheet**                                                                        **Mar 29, 03**

**ASSETS**

    **Current Assets**

        **Checking/Savings**

            Cash in CPB CK#4000-137320                          4,766.03

            Cash in CPB MM#4000-137339                          0.20

            Cash in WA Mutual General 24-3                      14,201.89

            Cash in WA Mutual Ticket 25-1                       3,588.01

            First Hawaiian Bank                                 41.18

            **Total Checking/Savings**                          22,597.31

        **Accounts Receivable**

            Accounts Receivable                                8,500.00

            **Total Accounts Receivable**                      8,500.00

        **Other Current Assets**

            Note Receivable - Daw                              7,000.00

            **Total Other Current Assets**                     7,000.00

        **Total Current Assets**                               38,097.31

    **Fixed Assets**

        Accumulated Depreciation                               -26,315.66

        Furniture                                              259.41

        Office Equipment                                       26,876.37

        Phone System                                           7,715.65

    **Total Fixed Assets**                                     8,535.77

    **Other Assets**

        Deposit                                                20,000.00

        Due from Parent                                        601,591.43

    **Total Other Assets**                                     621,591.43

**TOTAL ASSETS**                                                   668,224.51

**LIABILITIES & EQUITY**

    **Liabilities**

        **Current Liabilities**

            **Accounts Payable**

                 Accounts Payable                               170,378.55

            **Total Accounts Payable**                         170,378.55

            **Other Current Liabilities**

                 Accounts Payable - Oregon                      207,159.80

                 Accounts Payable - Wake Forest                 166,869.50

                 Accrued Payroll                                60,000.00

                 Accrued penalties and interest                 7,700.00

                 Deposit for pending stock issue                119,000.00

                 Note payable - BOH                             24,953.04

                 Note payable - Daw                             4,854.45

                 Note payable - MWC                             250,000.00

*Initial* 𝒫

EXHIBIT "95"                                ASI-06-001275



| | |
|---|---|
| Note payable - WAC | 25,000.00 |
| Note payable - Weston Daw | 15,000.00 |
| Payroll Liabilities | 38,289.74 |
| Total Other Current Liabilities | 918,826.33 |
| | |
| Total Current Liabilities | 1,089,204.88 |
| | |
| Long Term Liabilities | |
| Deferred Revenue | 24,240.15 |
| Due to Aloha Stadium | 62,852.97 |
| Due to King County | 60,765.00 |
| Note payable - ABC (LT) | 195,212.60 |
| Total Long Term Liabilities | 343,070.72 |
| | |
| Total Liabilities | 1,432,275.60 |
| | |
| Equity | |
| Capital Stock | 5,000.00 |
| Retained Earnings | -449,454.92 |
| Net Income | -319,596.17 |
| Total Equity | -764,051.09 |
| | |
| TOTAL LIABILITIES & EQUITY | 668,224.51 |

Aloha Sports Accounts Payable

| | Mar 29, 03 |
|---|---|
| Dator & Williams | 1,976.00 |
| Fedex | 14.94 |
| Go Tech | 280.00 |
| Goodsill Anderson Quinn & Stifel | 15,538.36 |
| Host Communications | 4,560.00 |
| Imperial Credit Companies | 6,944.67 |
| Iridio On Demand Digital Printing | 462.00 |
| James M. Sattler | 10,802.29 |
| Jeff Meaney | 188.00 |
| Josten's | 33,540.00 |
| Kinko's | 50.25 |
| KPMG | 3,307.27 |
| Lester J. Hee, CPA | 20,202.00 |
| McCormick and Schmicks | 2,482.00 |
| McNeil Wilson Communications | 8,770.79 |
| One 4 All Marketing | 34,550.00 |
| Pacific Guardian Life | 352.41 |
| Pitney Bowes Credit Corp | 7,361.35 |
| Pure Image | 282.00 |
| Saylor & Hill Insurance | 6,274.50 |
| Starcomm Wireless | 1,320.00 |
| University Health Alliance | 1,885.72 |
| Varsity Communications | 4,550.00 |
| World Class Athletic Surfaces | 6,684.00 |
| TOTAL | 170,378.55 |

8

EXHIBIT "95"

Initial 𝒫

ASI-06-001276

| Aloha Sports Cash Flow from 2000 | Apr 1, '00 - Mar 26, 03 |
|---|---|
| **OPERATING ACTIVITIES** | |
|   Net Income | -1,244,552.21 |
|   Adjustments to reconcile Net Income | |
|   to net cash provided by operations: | |
|     Accounts Receivable | -8,500.00 |
|     Note Receivable - Daw | -7,000.00 |
|     Accounts Payable | 170,378.55 |
|     Accounts Payable - Oregon | 207,159.60 |
|     Accounts Payable - Wake Forest | 166,869.50 |
|     Accrued Payroll | 60,000.00 |
|     Accrued penalties and interest | 7,700.00 |
|     Deposit for pending stock issue | 119,000.00 |
|     Note payable - BOH | 24,953.04 |
|     Note payable - Daw | 4,854.45 |
|     Note payable - MWC | 250,000.00 |
|     Note payable - WAC | 25,000.00 |
|     Note payable - Weston Daw | 15,000.00 |
|     Payroll Liabilities | 38,289.74 |
|   Net cash provided by Operating Activities | -170,847.33 |
| | |
| **INVESTING ACTIVITIES** | |
|     Accumulated Depreciation | 26,315.66 |
|     Furniture | -259.41 |
|     Office Equipment | -26,876.37 |
|     Phone System | -7,715.65 |
|     Deposit | -20,000.00 |
|     Due from Parent | -601,591.43 |
|   Net cash provided by Investing Activities | -630,127.20 |
| | |
| **FINANCING ACTIVITIES** | |
|     Deferred Revenue | 24,240.15 |
|     Due to Aloha Stadium | 62,852.97 |
|     Due to King County | 60,765.00 |
|     Note payable - ABC (LT) | 195,212.60 |
|     Capital Stock | 5,000.00 |
|     Retained Earnings | 475,501.12 |
|   Net cash provided by Financing Activities | 823,571.84 |
| | |
| Net cash increase for period | 22,597.31 |
| **Cash at end of period** | **22,597.31** |

Initial _____  _____

**EXHIBIT "95"**    ASI-06-001277

## EXHIBIT "C"

## RELEASE OF ALL RIGHTS AND CLAIMS AGREEMENT

This Release Agreement (the "Release Agreement") is made and entered into as of this 22nd day of April, 2003, by and among Pro Sports & Entertainment, Inc., a California corporation, ASI Acquisition Inc., Aloha Sports Inc., (the "Corporation"), on the one hand; Brian Dimartino, Leonard Klompus, Richard Schaller and Michael Long the Previous Owners ("Previous Owners") of Aloha Sports, Inc. ("ASI") on the other hand, with reference to the following facts:

WHEREAS, Pro Sports & Entertainment, Inc. agrees to purchase ASI Acquisitions, Inc. a Hawaii corporation ("ASIA") upon re-certification by the NCAA of ASI property, the Seattle Bowl ("SB") and;

WHEREAS, ASIA purchased ASI from its Previous Owners on March 31, 2000 in which a note payable is due to the Previous Owners, and;

WHEREAS, The Previous Owners agree to settle all outstanding payments due to them and to release all claims and future claims to any and all ownership of ASI and its subsidiaries and release and return all stock of ASI to the Corporation in return for a one time payment of $100,000. to be paid to the Previous Owners by the Corporation.

NOW, THEREFORE, the Parties agree as follows:  In consideration of the mutual promises, covenants, agreements and conditions contained herein and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.     CONSIDERATION

1.1.     Within fourteen business days from the re-certification of the Seattle Bowl, the Company shall pay to the Previous Owners the amount of $100,000.

2.  SETTLEMENT OF DISPUTES

Upon the terms and subject to the conditions set forth herein, the parties desire to settle in full all claims, differences, and disputes which now exist or which may exist in the future between them in connection with any other amounts or other property owned with respect to ASI (collectively the "Released Matters").

3.  RELEASE

3.1.     Release of Corporation.    In consideration for the mutual covenants, conditions and promises set forth herein, except for the obligations and liabilities of the Corporation arising under this Agreement, each of the Previous Owners for itself or himself and their agents, representatives, predecessors, successors and assignees hereby forever release, absolve and discharge the Corporation, and its officers, directors, shareholders, employees, agents, representatives, affiliates, attorneys, predecessors, successors and assigns (collectively, the "Corporation Representatives"), from and against any and all claims, demands, charges, complaints, suits, actions, causes of action, debts, liabilities, obligations, losses, costs and

*Initial* 1.()

expenses, including without limitation, any and all liabilities under the notes payable of ASIA in favor of the Previous Owners, attorneys' fees and court costs, whether known or unknown (collectively, the "Claims") which each of the Previous Owners ever had or asserted or which any of the Previous Owners may now or hereinafter have or assert, which arise under, or in any way relate to, or in any way are connected with the Released Matters.

3.2.    Release of the Previous Owners.    In consideration for the mutual covenants, conditions and promises set forth herein, except for the obligations and liabilities of the Previous Owners arising under this Agreement, the Corporation for itself or himself and their agents, representatives, predecessors, successors and assignees hereby forever release, absolve and discharge the Previous Owners and its officers, directors, shareholders, employees, agents, representatives, affiliates, attorneys, predecessors, successors and assigns (collectively, the "Previous Owners Representatives"), from and against any and all claims, demands, charges, complaints, suits, actions, causes of action, debts, liabilities, obligations, losses, costs and expenses, including without limitation, attorneys' fees and court costs, whether known or unknown (collectively, the "Claims") which the Corporation ever had or asserted or which any of the Corporation may now or hereinafter have or assert, which arise under, or in any way relate to, or in any way are connected with the Released Matters.

3.3.    Section 1542 Waiver.    Each of the Previous Owners expressly waives any and all rights or benefits which each of the Previous Owners has or may have or may have been conferred upon them by the provisions of Section 1542 of the California Civil Code, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

In connection with such waiver, each of the Previous Owners acknowledges that he or they may later discover facts different from or in addition to those which he or they knows or believes to be true with respect to the Claims, and each of the Previous Owners agrees that, in such event, this Agreement shall nevertheless remain effective in all respects notwithstanding such different or additional facts or the discovery of those facts.

4. REPRESENTATIONS AND WARRANTIES

Each of the Previous Owners represents and warrants that he or it (i) has not heretofore sold, assigned, hypothecated or otherwise transferred to any third party any rights or interest in or to any of the Claims; (ii) has been represented by independent counsel of his or its choice in connection with the negotiation and execution of this Agreement; and (iii) has read this Agreement understands the terms used herein and the consequences hereof.

5. COVENANT

Each of the Previous Owners covenants that no suit, arbitration or other action shall be commenced against the Corporation or the Corporate Representatives based upon any of the Claims, nor shall any of the Claims be asserted against the other party in any action by way of counterclaim, cross-complaint, setoff or similar pleadings and that this Agreement shall be a complete bar to any proceedings or assertions.

11

*Initial* 7J _____

The Corporation covenants that no suit, arbitration or other action shall be commenced against the Previous Owners or their Representatives based upon any of the Claims, nor shall any of the Claims be asserted against the other party in any action by way of counterclaim, cross-complaint, setoff or similar pleadings and that this Agreement shall be a complete bar to any proceedings or assertions.

6. APPLICABLE LAW AND SEVERABILITY

This Agreement shall, in all respects, be governed by the laws of the State of California applicable to agreements executed and to be wholly performed within the State of California. Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision contained herein and any present or future statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail but the provision of this Agreement which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law.

7. ENFORCEABILITY

It is agreed that the rights granted to the parties hereunder are of a special and unique kind and character and that, if there were a breach by any party of any material provision of this Agreement, the other party would not have an adequate remedy at law. It is expressly agreed therefore that the rights of the parties hereunder may be enforced by an action for specific performance and such other equitable relief as is provided under the laws of the State of California.

8. INTERPRETATION

This Agreement has been negotiated at arm's length and between persons (or their representatives) sophisticated and knowledgeable in the matters dealt within this Agreement. Accordingly, any rule of law (including California Civil Code Section 1654 and any successor statute) or legal decision that would require interpretation of any ambiguities against the party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purpose of the parties and this Agreement.

9. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any and all other written or oral negotiations, understandings or agreements among the parties with respect to the rights and obligations assumed herein and contains all of the covenants and agreements among the parties with respect to such rights and obligations.

10. ATTORNEYS' FEES

In the event any action be instituted by a party to enforce any of the terms and provisions contained herein, the prevailing party in such action shall be entitled to such reasonable attorneys' fees, costs and expenses as may be fixed by the court.

12

*Initial* ⳑ𝒫 _____

EXHIBIT "95"

ASI-06-001280

## 11. SUCCESSORS AND ASSIGNS

Neither party may assign his or its rights or delegate his or its obligations under this Agreement, in whole or in part. Except for the foregoing, each of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

## 12. NO OBLIGATION TO THIRD PARTIES

The execution and delivery of this Agreement shall not be deemed to confer any rights upon, directly, indirectly or by way of subrogation, nor obligate either of the parties hereto, to any person or entity other than each other.

## 13. MODIFICATIONS OR AMENDMENT

No amendment, change or modification of this Agreement shall be valid unless in writing, stating that it amends or modifies this Agreement, and signed by each of the parties hereto.

## 14. FURTHER ASSURANCES

Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties hereto.

## 15. TIME IS OF ESSENCE

Time is of the essence of this Agreement and all the terms, provisions, covenants and conditions hereof.

## 16. WAIVER

The waiver by any party to this Agreement of the breach of any provision of this Agreement shall not be deemed a continuing waiver or a waiver of any subsequent breach, whether of the same or another provision of this Agreement.

## 17. HEADINGS

The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience in reference. Should there be any conflict between any such caption and the paragraph at the head of which it appears, the paragraph and not such caption shall control and govern in the construction of this Agreement.

## 18. COUNTERPARTS

This Agreement may be executed in two (2) or more separate counterparts, each of which, when so executed, shall be deemed to be an original. Such counterparts shall together constitute and be one (1) and the same instrument.

13

*Initial* _____

IN WITNESS WHEREOFF, the parties hereto have executed this Agreement as of the day and year first above written.

_____
Brian Dimartino

_____
Leonard Klompus

_____
Richard Schaller

                                      Pro Sports & Entertainment, Inc.
                                        a California Corporation

_____
Michael Long
                                        By:_____
                                        Paul H Feller
                                        President & Chief Executive Officer

ASI Acquisition Inc.

By: __Terry LeRoy Daw (signature)_
Terry LeRoy Daw
President

Aloha Sports Inc.

By: _Terry LeRoy Daw (signature)_
Terry LeRoy Daw
President

*Initial* 70 _____