# ORIGINAL

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (Pro Hac Vice) (mblecher@blechercollins.com)
DAVID W. KESSELMAN (Pro Hac Vice) (dkesselman@blechercollins.com)
COURTNEY A. PALKO (Pro Hac Vice) (cpalko@blechercollins.com)
515 South Figueroa Street, 17th Floor
Los Angeles, California 90071
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

FREDERICK W. ROHLFING III, A LIMITED LIABILITY LAW COMPANY
FREDERICK W. ROHLFING III #3474 (fwr@caselombardi.com)
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813-3283
Telephone: (808) 547-5400
Facsimile: (808) 523-1888

Attorneys for Plaintiff Aloha Sports Inc.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 2 7 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA SPORTS INC., a Hawaii corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | CIVIL NO. CV04-00204 DAE/KSC<br><br>(Antitrust)<br><br>PLAINTIFF ALOHA SPORTS INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S ACCOUNTING OF COSTS AND FEES REIMBURSABLE UNDER "ORDER PROVISIONALLY GRANTING PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS ITS FIRST CAUSE OF ACTION WITH PREJUDICE AND ITS REMAINING CAUSES OF ACTION WITHOUT PREJUDICE" ENTERED JULY 5, 2006; EXHIBITS A AND B; CERTIFICATE OF SERVICE |

**PLAINTIFF ALOHA SPORTS INC.'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S ACCOUNTING OF COSTS AND FEES
REIMBURSABLE UNDER "ORDER PROVISIONALLY GRANTING
PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS ITS FIRST CAUSE
OF ACTION WITH PREJUDICE AND ITS REMAINING
CAUSES OF ACTION WITHOUT PREJUDICE" ENTERED JULY 5, 2006**

Plaintiff ALOHA SPORTS INC. ("Plaintiff" or "ASI") respectfully submits

this memorandum to the Court in opposition to Defendant NCAA's accounting of

attorneys' fees reimbursable under the "Order Provisionally Granting Plaintiff's

Motion To Voluntarily Dismiss Its First Cause Of Action With Prejudice And Its

Remaining Causes Of Action Without Prejudice" entered herein July 5, 2006 ("the

Order").

**I.    The attorneys' fees sought by the NCAA are unreasonable, excessive,
       not necessarily incurred, and duplicative.**

As a condition to voluntarily dismissing the federal antitrust claim with

prejudice and the remaining claims without prejudice, this Court ruled in its Order

that ASI must pay the NCAA's fees and costs "**incurred by the NCAA in**

**opposing**" ASI's motions for bifurcation and for voluntary dismissal. See Order at

14 (bold emphasis added). ASI accepts the Court's conditions and has requested an

accounting from the NCAA.  The NCAA submitted an accounting of $35,256.05.[1]

ASI objected that the amount was excessive, unreasonable, not necessarily

incurred, and consisted of duplicative entries and bloated hours. ASI offered to pay

---

[1] The NCAA's accounting is attached hereto as Exhibit A.

the NCAA $25,000 within ten business days. NCAA declined and advised that it would accept $30,000 if paid immediately. ASI advised the NCAA of its intent to file this opposition to the NCAA's submitted billing records.[2]

The Court may award costs to a defendant after the plaintiff voluntarily dismisses the action with or without prejudice. See Sequa Corp. v. Cooper, 245 F.3d 1036, 1037 (8th Cir. 2001). When plaintiff's dismissal is without prejudice, neither party prevails for purposes of Rule 54(d)(1). However, the Court has inherent authority to award costs to defendant. Id. Federal Rule of Civil Procedure 41(a)(2) provides that the Court may condition the order of dismissal "upon such terms and conditions as the court deems proper." ASI is willing to comply with the Court's order to pay the NCAA's costs and fees, but takes issue with the NCAA's accounting and the excessive amount of the fees sought.

Courts have the obligation to ensure that all fees sought are reasonable. In DFS Group L.P. v. Paiea Properties, 110 Haw. 217 (2006), when presented with the appellee's request for $139,121.16 in attorneys' fees and taxes for services rendered start to finish in successfully opposing an appeal, the Hawaii Supreme Court granted attorneys' fees of $22,575 and taxes of $940, and referred the record to the State of Hawaii Office of Disciplinary Counsel for investigation as to

---

[2]   The email communications between Mr. Blecher, counsel for ASI, and Mr. Curtner, counsel for the NCAA, are cumulatively attached hereto as Exhibit B.

whether the Hawaii Rules of Professional Conduct were violated by the appellee's attorneys by excessive billing.

Here, the NCAA is seeking $35,218.25 in fees for the preparation and filing of simple and straightforward opposition memoranda to two procedural motions, the first memorandum comprising just 11 pages, the second 14 pages, with a brief telephonic appearance at a hearing on one of the motions. On its face, the total amount and time spent – 185.05 hours and an average fee of $17,500 per motion – appears unwarranted and excessive. A significant portion of counsels' time descriptions are too vague to be analyzed, are duplicative, demonstrate inefficient use of time, and, therefore, are unsubstantiated.

A party does not carry its burden in fee requests when the backup data consists of vague entries. "The documentation submitted should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable." Ackerman v. Western Electric Co., 643 F. Supp. 836, 862 (N.D. Cal. 1986), aff'd, 860 F.2d 1514 (9th Cir. 1988). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). Accord H.J., Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991) (affirming 20% reduction in fees for inadequate documentation, and imprecise billing record for entries such as "legal research," "trial prep" and "met with

client"); <u>United States Football League v. National Football League</u>, 887 F.2d 408, 415 (2d Cir. 1989) (affirming 30% reduction in fees awarded – 10% reduction for "vagueness in documentation of certain time entries" and 20% for "limited success"), <u>cert. denied</u>, 493 U.S. 1071, 110 S. Ct. 1116 (1990); <u>Tomazzoli v. Sheedy</u>, 804 F.2d 93, 97 (7th Cir. 1986) (affirming reduction of hours to be compensated where such were based on "particularly vague" records); <u>Desimone v. Industrial Bio-Test Laboratories, Inc.</u>, 83 F.R.D. 615, 621-22 (S.D.N.Y. 1979) (reducing attorneys' time valuations for fees where projects were not clearly delineated); <u>In re BiCoastal Corp.</u>, 121 B.R. 653, 656 (Bankr. M.D. Fla. 1990) (disallowing fees for services where descriptions did not allow court to objectively determine if services were reasonable or necessary).

Consistent with these authorities, Local Rule 54.3(d)2. states in pertinent part (bold emphasis added):

> The party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated. . . . **If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly.**

The NCAA has failed to satisfy its burden of demonstrating the reasonableness, usefulness and efficiency of its requested fees. The descriptions provided are too vague to explain why they are necessary or reasonable. To be adequate, for instance, billing for research should be described in detail. <u>See</u>

Cristancho v. National Broadcasting Co., 117 F.R.D. 609, 611 (N.D. Ill. 1987) ("The specific question or questions researched should be described, and their relationship to the case, if not apparent, should be explained."); In re Olson, 884 F.2d 1415, (D.C. Cir. 1989); L.R. Rule 54.3(d) ("entries for legal research must include an identification of the specific issue researched").

With all due respect, these two motions presented no complicated legal issues justifying the excessive amount of legal research, duplicative efforts, and oversight. Much of the legal research and writing could have and should have been completed by one associate, rather than multiple entries of two or more lawyers for what appears to be the same work.

For example, the NCAA submitted two identical entries for 3.70 hours each for work completed by Mr. Warheit on 6/18/06 for "research[ing] cases and statutes relating to upcoming memo on the resjudicata [sic] effects of a dismissed federal claim brought in state court." Then, during the following week (6/19, 6/20, 6/22, 6/23, 6/26, 6/27), Mr. Warheit spent an additional **37.8 hours** researching "procedural issues" and "tolling of statute of limitations" and writing a memo. Most of the time expended on this project, and the completion of his memo, was expended **after** the NCAA had already filed its opposition to ASI's motion to dismiss, and therefore was not "incurred by the NCAA in opposing" ASI's motion to dismiss. Since none of Mr. Warheit's entries appear reasonable, Mr. Warheit's

45.20 hours of time, at his $140 per hour billing rate, should therefore be eliminated from the fee request, thereby reducing the total fee request by $6,328.00.

Additionally, much of the time that Ms. Kaur spent conducting legal research and preparing the memorandum in opposition to the motion to bifurcate is unsupportable. On 4/3/06, Ms. Kaur billed 1.00 hours for "review of motion filed to extend time and bifurcate trial." On 4/6/06, Ms. Kaur billed 7.00 hours to conduct "research and analysis of case law on motion to bifurcate or extend schedule." On 4/7/06, she billed 8.50 hours "drafting opposition to motion to bifurcate." On 4/17/06, she billed 1.00 hour on "correspondence with local counsel regarding authority of Magistrate Chang to bifurcate the trial." On 4/21, she billed 3.00 hours for "editing opposition to bifurcation" and to "review stipulation to change dates sent by local counsel." On 4/26/06, she billed 2.00 hours on a "phone call with Ken Mansfield" and "changes to opposition to bifurcation and email local counsel." On 4/27/06, she billed 3.75 hours "finalizing brief for filing regarding opposition to bifurcation and supervising filing." Altogether, for research, drafting, and editing the NCAA's opposition to bifurcate, Ms. Kaur spent 26.25 hours at her billing rate of $165 per hour, for a total of $4,331.25.

Ms. Kaur's time entries and descriptions have an appearance similar to the reconstructed time records described in <u>Ramos v. Lamm</u>, 713 F.2d 546 (10th Cir.

1983), where "lawyers who remember spending the entire day working on a case are likely to overstate the hours worked by forgetting interruptions and intrusions unrelated to the case." Id. at 553.

Moreover, Mr. Mansfield appears to have duplicated much of Ms. Kaur's work on the opposition to the motion to bifurcate, as their entries are nearly identical to one another on numerous occasions. See Mr. Mansfield's entries for 4/3/06 (1.50 hours), 4/5/06 (.50 hours), 4/8/06 (1.00 hours), 4/10/06 (1.00 hours), 4/17/06 (1.50 hours), 4/23/06 (1.00 hours), 4/24/06 (1.00 hours) 4/26/06 (2.50 hours), 4/27/06 (1.20 hours), totaling 11.70 hours at his billing rate of $165 per hour, for a total of $1,930.50.

Ms. Kaur and Mr. Mansfield duplicated their work again in both preparing for and both attending, along with Mr. Curtner, the hearing on the motion to bifurcate. "The court should assess the possibility that reported hours include duplication by . . . evaluating the roles played by the lawyers in the litigation generally." Id. at 554.

Reducing Ms. Kaur's time spent on researching, drafting, and editing the NCAA's opposition to the motion to bifurcate by about half, to 13.00 hours, would appear reasonable, thereby reducing the total fee request by another $2,145.00. Eliminating the additional 2.00 hours she billed for preparing for and attending the hearing would also be appropriate in light of Mr. Mansfield's billing for the same

services, thereby reducing the total fee request by another $330.00. Even if the documented time was actually spent to complete these tasks, it does not necessarily mean that "those hours were spent reasonably in the litigation." Id. at 553.

> "Compiling raw totals spent, however, does not complete the inquiry. It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

Id. at 553, quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in original). See also L.R. Rule 54.3(e)(3) (requiring the affidavit of counsel in motions for fee awards to identify "all adjustments, if any, made in the course of exercising 'billing judgment.'").

A similar pattern of excessive billing by Ms. Kaur is evident in her billing related to opposing ASI's motion to voluntarily dismiss its federal antitrust claim, with her time billed for her entries from 6/12/06 through 6/21/06 totaling 43.25 hours. Again, Mr. Mansfield appears to have completed several assignments in duplicate. See Mr. Mansfield's entries for 6/19/06, 6/20/06, and 6/21/06, totaling 8.30 hours. Again, reducing Ms. Kaur's time spent on researching, drafting, and editing the NCAA's opposition to the motion to dismiss by about half, to 22.00 hours, would appear reasonable, thereby reducing the total fee request by another 21.25 hours, or $3,506.25.

If the above-described reductions totaling $10,312.50 are subtracted from the NCAA's initial $35,218.25, the remaining balance is $24,905.75. This balance should be reduced by another 10%, thus down to $22,415.18, based upon the NCAA's use of quarter-hour billing units.

> Courts have recognized that billing "by the quarter-hour, not by the tenth" is a "deficient" practice "because it does not reasonably reflect the number of hours actually worked." See Zucker v. Occidental Petroleum Corp., 968 F. Supp. 1396, 1403 (D.C. Cal. 1997) (demonstrating that attorney with $300 hourly rate who works 6 minutes on a matter would charge $ 30 if he bills by the tenth of an hour and $75 if he bills by the quarter hour). Because of this, courts have reduced the fee award by a percentage to account for the unearned increment based on quarter-hour billing. See Preseault v. United States, 52 Fed. Cl. 667, 680-81 (Fed. Cl. 2002) (citing cases). Therefore, the Court will reduce the attorneys' fee award . . . by ten percent to account for the practice of billing by the quarter-hour.

Lopez v. San Francisco Unified Sch. Dist., 385 F. Supp. 2d 981, 993 (2005).

Further justification for this Honorable Court reducing the NCAA's fee request still further is the NCAA's counsels' utilization of "block billing, because block billing does not precisely delineate 'how . . . hours were allotted to specific tasks.'" Cadena v. The Pacesetter Corporation, 224 F.3d 1203, 1215 (10th Cir. 2000), quoting Ramos, 713 F.2d at 553. Block billing thus does not comply with L.R. Rule 54.3(d)'s requirement that the "description of the work performed by each attorneys and paraglegal [be] broken down by hours or fractions thereof expended on each task."

An example of the perniciousness of block billing in the context of the NCAA's fee request can be found in Ms. Kaur's entry for 4/10/06 of 2.00 hours, in which "edits to opposition to motion to bifurcate and circulate to team" are combined with "editing summary judgment brief." Editing the summary judgment brief, of course, does not constitute fees and costs "**incurred by the NCAA in opposing**" ASI's motions for bifurcation and for voluntary dismissal. See Order at 14 (bold emphasis added).

Moreover, 31 of the 76 entries, or 41% of total entries, are in increments of 1 hour or multiples thereof. It appears that not only have entries been rounded up to the next quarter-hour, but rather the next hour.

Also, several references to "correspondence" do not identify the recipient or recipients of the correspondence, and therefore do not "describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated." L.R. 54.3(d).

In conclusion, based on all the submitted billing records, ASI respectfully submits that the NCAA's fees are unreasonable and duplicative and the work was not necessarily incurred. Moreover, the NCAA's descriptions lack detail to justify the excessive amount of time billed for seemingly simple and straightforward work. Therefore, ASI respectfully urges this Court to reduce the attorneys' fees appropriately.

## II.   Conclusion.

For the foregoing reasons, ASI respectfully requests that the NCAA's fee request be substantially reduced to $22,415.18 or less.

DATED: July 27, 2006;
       Honolulu, Hawaii

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
DAVID W. KESSELMAN
COURTNEY A. PALKO

FREDERICK W. ROHLFING III, A
LIMITED LIABILITY LAW COMPANY
FREDERICK W. ROHLFING III

      FREDERICK W. ROHLFING III
    Attorneys for Plaintiff Aloha Sports Inc.