McCORRISTON MILLER MUKAI MacKINNON LLP
WILLIAM C. McCORRISTON          #995
KENNETH J. MANSFIELD            #7227
mccorriston@m4law.com; mansfield@m4law.com
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii  96813
Telephone:  (808) 529-7300; Facsimile:  (808) 524-8293

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
GREGORY L. CURTNER (pro hac vice)
ROBERT J. WIERENGA (pro hac vice)
ATLEEN KAUR (pro hac vice)
curtner@millercanfield.com; wierenga@millercanfield.com
kaur@millercanfield.com
101 North Main Street, 7th Floor
Ann Arbor, MI  48104-1400
Telephone: (734) 663-2445; Facsimile: (734) 663-8624

Attorneys for Defendant
THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA SPORTS INC., a Hawaii corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association, | CIVIL NO. CV04-000204 DAE/KSC<br><br>DEFENDANT NCAA'S MEMORANDUM IN SUPPORT OF ITS ACCOUNTING OF COSTS AND FEES REIMBURSABLE UNDER ORDER PROVISIONALLY GRANTING PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS ITS FIRST CAUSE OF ACTION WITH PREJUDICE AND ITS REMAINING CAUSES OF ACTION WITHOUT PREJUDICE, ENTERED JULY 5, 2006; DECLARATION OF ATLEEN KAUR; EXHIBITS "A" – "K"; CERTIFICATE OF SERVICE |

143650.1

## TABLE OF CONTENTS

PAGE

I.    STANDARD FOR DETERMINING REASONABLENESS OF
      ATTORNEYS' FEES IN THE NINTH CIRCUIT ........................................ 3

II.   ASI DOES NOT CLAIM THAT THE HOURLY RATES IN THE
      NCAA'S ESTIMATE ARE UNREASONABLE ........................................ 8

III.  THE NUMBER OF HOURS EXPENDED BY MR. WARHEIT, MS.
      KAUR, AND MR. MANSFIELD ARE REASONABLE ........................... 9

IV.   CONCLUSION ........................................................................................ 19

TABLE OF AUTHORITIES

PAGE(S)

**CASES**

Ackerman v. Western Elec. Co.,
  643 F. Supp. 836 (N.D. Cal. 1986) (citations omitted) .................................. 8, 14

Bell v. Clackamas County,
  341 F.3d 858 (9th Cir. 2003)................................................................................. 8

Cadena v. The Pacesetter Corp.,
  224 F.3d 1203 (10th Cir. 2000).......................................................................... 18

Cunningham v. County of Los Angeles,
  879 F.2d 481 (9th Cir. 1988)........................................................................ 11, 13

Democratic Party of Washington State v. Reed,
  388 F.3d 1281 (9th Cir. 2004)..........................................................6, 10, 16, 17

Hensley v. Eckerhart,
  461 U.S. 424 n.11 (1983) .............................................................................. 11, 19

Keith v. Volpe,
  833 F.2d 850 (9th Cir. 1987)............................................................................... 18

Kerr v. Screen Extras Guild, Inc.,
  526 F.2d 67 (9th Cir. 1975) cert. denied, 425 U.S. 951 (1976)................4, 11, 13

Missouri v. Jenkins by Agyei,
  491 U.S. 274 (1989).............................................................................................. 8

Morales v. v. City of San Rafael,
  96 F.3d 359 (9th Cir. 1996).................................................................................. 4

Oberfelder v. City of Petaluma,
  No. C-98-1470 MHP, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal.
  January 29, 2002) ................................................................................................. 9

Ramos v. Lamm,
  713 F.2d 546 (10th Cir. 1983).......................................................... 11, 13, 14, 18

Williams v. Alioto,
   625 F.2d 845 (9th Cir. 1980)..............................................................................15

## RULES

LR83.1(e)...........................................................................................................16

DEFENDANT NCAA'S MEMORANDUM IN SUPPORT
OF ITS ACCOUNTING OF COSTS AND FEES REIMBURSABLE
UNDER ORDER PROVISIONALLY GRANTING PLAINTIFF'S
MOTION TO VOLUNTARILY DISMISS ITS FIRST CAUSE OF
ACTION WITH PREJUDICE AND ITS REMAINING CAUSES OF
ACTION WITHOUT PREJUDICE, ENTERED JULY 5, 2006

On July 5, 2006 this Court entered an order provisionally granting Aloha

Sports, Inc.'s ("ASI") motion to voluntarily dismiss its federal law claim with

prejudice and its state law claims without prejudice (the "Order").  The Court's

granting of the voluntary dismissal of ASI's state law claims was conditioned upon

ASI's reimbursement of:

> 1)    Costs and attorney's fees incurred by the NCAA in opposing
>        ASI's motion to bifurcate or in the alternative to extend the
>        discovery deadline.
> 2)    Costs and attorney's fees incurred by the NCAA in opposing
>        the instant motion.

Order at 14.  In addition to paying the NCAA's costs and attorney's fees, ASI was

required to "stipulate that all discovery materials assembled to date can be used in

any subsequent proceeding between the parties."  Id.[1]

As is par for the course in this case, the NCAA began correspondence with

ASI regarding these conditions, without much response from ASI.  On July 7, 2006,

the NCAA informed ASI that although it was still gathering data on the costs, it

estimated the costs and fees to be approximately $30,000.  ASI expressed a

---

[1] At no time has ASI indicated that it is willing to so stipulate.

reluctance to pay this amount and wished to negotiate a lower amount.  On July 19, 2006, the NCAA provided ASI with documentation regarding its costs and fees (at historical rates), which were just over $35,000.  The NCAA noted that this documentation was subject to revision and was submitted in an effort to resolve the issue.  <u>See</u> Exhibit A.  In response, ASI informed the NCAA that it was willing to pay $25,000, payable 10 business days after the NCAA's agreement to accept this amount as payment of its costs and fees under the Order.  <u>See</u> Exhibit B.

As the NCAA has outlined in its motion for summary judgment, ASI has a line of unpaid creditors and at least 7 outstanding judgments against it for failure to pay its debts.  <u>See</u> Exhibits C-I.  Under this record, the NCAA could not agree to take deferred payment from ASI and allow it to keep litigating the case, which it has been less than diligent in pursuing.  ASI's lack of diligence had already prejudiced the NCAA by adding costs, wasting time and resources, and causing undue delay.  When the NCAA rejected ASI's offer of a deferred payment of $25,000, ASI filed its opposition to the NCAA's accounting of costs and fees reimbursable under the Order on July 27, 2006.  ("ASI Oppn").  Since this document was filed one day prior to the settlement conference, the NCAA waited to submit its response to ASI's unfounded opposition.

Although the parties did not settle the entire case during the settlement conference with Judge Chang, the parties were ordered by the Judge to meet and confer regarding ASI's opposition to the NCAA's fees and costs. The parties were ordered to try and resolve this matter out of Court. In keeping with that direction, Mr. Curtner, counsel for the NCAA, e-mailed Mr. Blecher and offered again to settle the costs and fees issue for $30,000 after providing Mr. Blecher with documentation that the current rates would take the claim to over $41,000. He also indicated that the NCAA would like to settle the entire matter. Mr. Blecher responded that his "client suggests that you go ahead with your filing." See e-mail correspondence between Mr. Curtner and Mr. Blecher, Exhibit J.

In light of this response, it appears to the NCAA that any further attempt to hold conversations about the costs and fees with ASI will be futile. Therefore, the NCAA is now submitting its response to ASI's opposition to its fees and costs and apologizes to the Court that it has failed to resolve this matter.

I. <u>STANDARD FOR DETERMINING REASONABLENESS OF ATTORNEYS' FEES IN THE NINTH CIRCUIT</u>

ASI's first omission in its opposition is its failure to apprise this Court of the relevant analysis under Ninth Circuit law for determining the reasonableness of attorneys' fees. The Ninth Circuit follows the lodestar method for determining the reasonableness of attorneys' fees. Under the lodestar method a reasonable number of hours expended is multiplied by a reasonable hourly fee to compute the attorneys'

fees owed in any particular case. The lodestar method is entitled to a strong

presumption of reasonableness. The first step in the lodestar method is to determine

the reasonable number of hours spent and multiply it with the reasonable hourly rate.

After this computation, a court may adjust the lodestar figure up or down based upon

certain factors that are not already subsumed in the lodestar calculation. Morales v.

v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996).

The Ninth Circuit has adopted the following 12 factors to determine

reasonableness of attorneys' fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975) cert. denied,

425 U.S. 951 (1976).

Under the lodestar method and the Kerr factors, the NCAA's submission of its

estimated costs and fees was reasonable and is fully reimbursable.[2] The NCAA's

---

[2] The NCAA had provided ASI with its costs and fees subject to revision. The NCAA's counsel have now reviewed their and fees for accuracy and attach the revised version of the costs and fees as Exhibit K. The revised costs and fees amount to $34,888.25 for fees if historical rates are used and $41,698.25 if current rates are used. The copying costs amount to $114.60.

attorneys have staffed this case leanly. Local rules require that a party be represented by local counsel in addition to counsel from another jurisdiction. LR83.2. To that end, the NCAA engaged two law firms -- McCorriston Miller Mukai MacKinnon LLP was engaged to represent the NCAA as Hawaii counsel, and Miller Canfield Paddock & Stone PLC was engaged to represent the NCAA because of its expertise in sports and antitrust law, as well as its longstanding attorney-client relationship with the NCAA.[3] Both law firms staffed the matter leanly, with one senior partner and one junior partner/associate from each firm. Therefore, a total of only four lawyers performed the majority of the tasks for a complex antitrust matter in which ASI was initially claiming approximately $7 million as damages before trebling. Even among these four lawyers there was no duplication of research or initial drafting of briefs, and ASI cannot point to any such duplication. In fact, Mr. McCorriston had only one billable entry of .20 hours regarding a letter to Judge Ezra. Furthermore, where feasible, both law firms assigned matters that could be handled by summer associates,[4] paralegals or legal secretaries to those personnel in order to keep the client's costs low.

---

[3] ASI is also represented by two law firms in this matter.

[4] Mr. Warheit was a summer associate at Miller Canfield Paddock & Stone during the time he conducted research for the NCAA's briefs in opposition to ASI's motions.

Both motions for which this Court allowed the NCAA to recover its attorneys' fees were filed by ASI. The NCAA had to respond adequately and, indeed, aggressively. "Litigation has something of the tennis game, something of war, to it; if one side hits the ball, or shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back." <u>Democratic Party of Washington State v. Reed</u>, 388 F.3d 1281, 1287 (9th Cir. 2004).

First, the NCAA had expended significant resources during discovery of all issues involved in the trial and sought to end the litigation on all issues in a timely manner to avoid further costs. ASI's motion to bifurcate the trial implied protracted litigation and duplicative efforts. The NCAA's interest in opposing this motion needed a thorough and forceful approach.

Second, ASI's motion to dismiss its federal antitrust claim with prejudice and its state law claims without prejudice was a dispositive motion for the proceedings in this Court. The NCAA might have to undergo a whole new trial on the same issues in state court if ASI's state law claims were dismissed without prejudice, therefore its opposition to that motion also needed to be well researched, responsive, thorough and forceful. A dispositive motion requires the utmost attention to detail and possible arguments. While researching and drafting its opposition to this motion, NCAA counsel also had to respond to ASI's ex-parte motion for shortening time for the hearing on this motion.

Despite ASI's unsupported assertion that "these two motions presented no complicated legal issues," ASI Oppn at 5, the fact is that neither of these motions lent itself to a "form" response that would require minimal research or drafting time. The issues presented in these motions required research tailored to Hawaii and Ninth Circuit law for a compelling response to ASI's misplaced reliance on authorities. Both motions presented an opportunity for the NCAA to further its defense in this Court and perhaps end the litigation entirely.

On the motion to bifurcate, the NCAA was the prevailing party as the Court denied ASI's motion to bifurcate the trial. On ASI's motion to voluntarily dismiss its state law claims without prejudice, the NCAA achieved significant, if not whole, success because the Court's Order granting that motion was conditioned upon payment of NCAA's attorneys' fees and costs. The NCAA requested Judge Ezra to condition the voluntary dismissal of ASI's state law claims without prejudice upon payment of all of its costs and fees incurred in this litigation. By limiting the condition of dismissal to costs and fees for these two motions, Judge Ezra has already shown leniency to ASI and the costs and fees should not be further reduced. Under the <u>Kerr</u> factors, the NCAA has presented an economical and reasonable accounting of its costs as further detailed below.

II.    <u>ASI DOES NOT CLAIM THAT THE HOURLY RATES IN THE NCAA'S ESTIMATE ARE UNREASONABLE</u>

First, the NCAA notes that ASI does not claim that the hourly rates charged for any of the NCAA's attorneys are unreasonable.  In fact, none of the attorneys have charged an unreasonable rate for their level of experience and expertise.[5]

ASI was requested to pay at the reduced historical rates that the two law firms have been charging their valued client, the NCAA.  Lawyers from both firms bill the NCAA at reduced hourly rates from their current rates charged to other clients for new matters.  If the current, standard rates were used for the attorneys from the two law firms, as they are entitled to recover under established law, the total attorneys' fees would amount to $41,698.25.  <u>See</u> Exhibit K.  The NCAA is entitled to these current attorneys' fees under <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 283-84 (1989), even though these higher, current rates were not billed to the NCAA.  <u>See also</u> <u>Bell v. Clackamas County</u>, 341 F.3d 858, 868 (9th Cir. 2003) ("A court awarding attorney fees must look to the prevailing market rates in the relevant community.  We have held that the court has discretion to apply the rates in effect at the time the work was performed.  The court may also award rates at an

_____

[5] "A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed.  The Court may consider the applicant's customary billing rates and the prevailing rate charged by attorneys of similar skill and experience for comparable legal services in the community."  <u>Ackerman v. Western Elec. Co.</u>, 643 F. Supp. 836, 866-67 (N.D. Cal. 1986) (citations omitted).

attorney's current rate where appropriate to compensate for the lengthy delay in receiving payment") (internal citations omitted).  In Oberfelder v. City of Petaluma, No. C-98-1470 MHP, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal. January 29, 2002), four years prior to the NCAA's submission of costs and fees, the district court found hourly rates in the same range as the current rates for the NCAA's counsel to be reasonable, including rates for summer associates.[6]

III.    THE NUMBER OF HOURS EXPENDED BY MR. WARHEIT, MS. KAUR, AND MR. MANSFIELD ARE REASONABLE

Unable to point to any actual duplication in the work necessary to oppose ASI's two motions -- research, drafting or editing -- ASI attempts to argue the number of hours spent on these tasks is excessive.  However, it does not contest the time entries of Mr. Curtner and Mr. McCorriston.

First, ASI argues that time spent by Mr. Warheit to research the issue of res judicata and statute of limitations was excessive and unreasonable.  ASI Oppn at 5.  However, the issue of res judicata was key to the NCAA's opposition to ASI's motion to voluntarily dismiss its state law claims without prejudice.  In its opposition, the NCAA urged this Court to retain supplemental jurisdiction over

---

[6] That court also noted that it had "had the opportunity to evaluate first-hand the work of [counsel seeking fees] during courtroom hearings and through briefing and memoranda."  Oberfelder, 2002 U.S. Dist. LEXIS at *6.  The Court used these observations to assess the reasonableness of the costs and fees.  Similarly, this Court has had a first-hand opportunity to evaluate the NCAA's counsel's timeliness and quality of briefing.  The NCAA has complied with all of its obligations to this Court and has submitted responsive and timely briefs.

ASI's state law claims, and then dismiss those claims on *res judicata* grounds.
Presenting this issue to the Court was reasonable, indeed prudent, to further the
NCAA's right to bring this case to a close as early as possible. "When lawyers
research the law needed to write a brief, they ordinarily bill their clients for the time.
There is nothing to suggest that the time billed in this case was for general
background rather than preparation of briefs." <u>Democratic Party of Washington</u>
<u>State,</u> 388 F.3d at 1286. This issue was specifically researched for the NCAA's
opposition to ASI's motion and the time spent by Mr. Warheit on this issue is hence
reasonable.

Further, the NCAA contemplated making an argument implicating the effect
on the statute of limitations regarding ASI's state law claims if those claims were
refiled in state court. The fact that this argument was not in the final memorandum
submitted to the Court, does not render the time spent on researching this issue
unreasonable or unwarranted. In order to decide the merits of an argument, a party
needs to research the issues surrounding that argument. These are costs necessarily
incurred in drafting an opposition to ASI's motion. ASI's objection that Mr. Warheit
completed his memo after the NCAA's filing is also without avail: "a case does not
necessarily stop dead between [briefing], argument and decision. Lawyers may
need to consider subsequent authorities … respond to inquiries from their clients,
prepare for what they will need to do after decision, and so forth." <u>Democratic Party</u>

of Washington State, 388 F.3d at 1287.  The issues of *res judicata* and statute of

limitations were not raised by the NCAA of its own accord, rather these were issues

that were necessary to be considered in light of ASI's motion for voluntary dismissal

of its state law claims without prejudice and the NCAA's counsel were reasonable

and prudent in preparing to raising these issues if the Court so inquired or the client's

best interests so required.

ASI next asserts that the number of hours spent by Ms. Kaur in researching,

drafting and editing the NCAA's oppositions to ASI's motions is excessive.     ASI

offers no explanation of why it arrives at this conclusion but it urges the court to

reduce Ms. Kaur's hours by half.  As the Supreme Court and the Ninth Circuit have

both held, arbitrary mathematical formulas cannot be applied in assessing the

reasonableness of the hours spent by an attorney.  Cunningham v. County of Los

Angeles, 879 F.2d 481, 485-86 (9th Cir. 1988) ("courts may not adopt rigid

mathematical formulas … The Supreme Court has disapproved on more than one

occasion of such pretensions to mathematical precision.") (citing Hensley v.

Eckerhart, 461 U.S. 424, 435, n.11 (1983)).  The Kerr factors are the relevant

inquiry.

The only case cited by ASI in support of its assertion that Ms. Kaur's hours

were excessive is Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983).  However, an

analogy to that case is faulty here because that case involved billing of hours that

were clearly excessive without any further inquiry.  For example, that case involved 100 hours billed for drafting a complaint.  In contrast, 26.25 hours spent on researching, drafting, and editing a brief in opposition to ASI's motion to bifurcate the trial, which could determine the course of the case, is not excessive.

The NCAA's listing of attorneys' fees shows, and ASI does not argue otherwise, that there was no duplication in this effort.  Ms. Kaur was primarily responsible for all of the case law research and drafting of the briefs.  Therefore, the only argument ASI can make is that Ms. Kaur's hours were excessive because her hours indicate a few, nearly entire days spent working on this case.  ASI Oppn at 6-7.  However, Ms. Kaur spent only two days on the opposition to ASI's motion to bifurcate during which her hours can be presumed to be the "entire day" -- on 4/6/06 she spent 7 hours on research and analysis of case law regarding this motion.[7]  On 4/7/06 she spent 8.5 hours drafting the brief.  On both of these days Ms. Kaur spent time on other cases and did not simply allocate the entire day to this case.  She billed time to other files on the same day for work performed on other files.  See Kaur Dec. at ¶¶7-8.  Research of case law on this motion involved verifying and shepardizing cases cited by ASI and research of case law to provide the court with the correct

_____

[7] As reflected in Exhibit K, Ms. Kaur also had many more days in which she spent no billable time on this case.

parameters of analysis and respond to ASI's misconstruing of authorities.  See Kaur

Dec. at ¶¶7-8.

When the Ramos Court noted that "lawyers who remember spending the

entire day working on a case are likely to overstate the hours worked by forgetting

interruptions and intrusions unrelated to the case," 713 F.2d at 553, n.2,[8]  the court

was assessing the reasonableness of an attorney's time who had reconstructed her

time later in the case, and claimed to have spent 20 of 21 consecutive days working

on the same case for not less than 5.5 hours each day and as high as 18 hours per

day.  In contrast, in a three month period, Ms. Kaur had only 7 days in which she

devoted 5 or more hours of her day to opposing ASI's motions.  See Kaur Dec. at

¶¶1-13.  This is not unusual or unreasonable for an attorney with primary

responsibility for legal research and drafting of legal memoranda submitted to the

Court.  In addition, the NCAA was the prevailing party with respect to ASI's

motion to bifurcate the trial and was successful in urging the Court to allow its

attorneys' fees to be reimbursed for that motion and ASI's motion for voluntary

dismissal of its state law claims without prejudice.  "[T]he 'results obtained' are

probative on the issue of the 'reasonableness' of a fee award."  Cunningham, 879

F.2d at 486 (citing the eighth Kerr factor).  As discussed above, the Kerr factors

---

[8]  ASI's citation to this quote omits the notation to a footnote in the opinion.  This
and other instances of mistyped citations by ASI, illustrate the need for careful
research and editing of briefs submitted by counsel for the NCAA.

require a consideration of the outcome when assessing the reasonableness of attorneys' fees. ASI's position, that the NCAA counsel should have less zealously opposed these motions, seems ridiculous in light of the damages it was claiming in this suit. ASI's lack of attention to its briefing is not indicative of the work performed by the NCAA's counsel.

The <u>Ramos</u> court noted that the "records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks -- for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." 713 F.2d at 553. The hours identified by Ms. Kaur are clearly labeled for specific tasks including research, writing, and editing with input from other counsel. Research performed by Ms. Kaur is further noted by topic of research. For example, on 6/14/06 Ms. Kaur noted that she researched and analyzed the issues of supplemental jurisdiction and discretion of district courts to retain jurisdiction. <u>See</u> Exhibit K. The costs and fees submitted by the NCAA are a far cry from those in the <u>Ramos</u> case.

While it is true that in <u>Ramos</u> the Tenth Circuit noted that detailed time records are required in that Circuit, "the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award." <u>Ackerman v. Western Elec. Co</u>., 643

F. Supp. 836, 863 (N.D. Cal. 1986).  Ms. Kaur's attached declaration, in addition to her detailed time entries, explains the tasks engaged in by her during the days that she devoted a majority of the time to researching and briefing the NCAA's oppositions to ASI's motions.  See Kaur Dec. at ¶¶1-13; see also Williams v. Alioto, 625 F.2d 845, 849 (9th Cir. 1980) ("The affidavits before the court were sufficiently detailed to enable the court to consider all the factors necessary in setting the fees.").

ASI objects to allowing fees for tasks that were supposedly duplicative because they were performed by both Mr. Mansfield and Ms. Kaur.  For instance, ASI asks that costs be reduced for preparation for and attendance by one of these two attorneys at the hearing on ASI's motion to bifurcate the trial.  In order to save travel costs to their client, counsel for the NCAA requested permission for Mr. Curtner, the attorney arguing the motion, to appear by phone.  Ms. Kaur was present at the hearing to assist Mr. Curtner with questions that may be raised by the Court, and not merely for personal edification.  As the Ninth Circuit has explained:

> Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort.  Courts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication.  For example, if lawyers merely watch so that they can learn and use their knowledge in subsequent cases, their time should not be billed.  But if, for example, they are there because their assistance is or may be needed by the lawyer arguing the case, as when a judge asks "where is that in the record," and one lawyer must frantically flip through the pages and find the reference to hand to the lawyer arguing, then the assistance is most definitely necessary.  Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later.

Democratic Party of Washington State, 388 F.3d at 1286-87.

Additionally, LR 83.1(e) *requires* local counsel to attend all court proceedings: "[t]he associated attorney shall participate in all court proceedings unless otherwise ordered by the court . . . ." Thus, in addition to Mr. Mansfield's obligation to ensure that the NCAA received proper local representation, attendance at the hearing, by himself or Mr. McCorriston, was in fact *mandatory*. Further, Mr. Mansfield's time spent preparing for the hearing was reasonable and necessary. Not only is it in the client's best interests to have *informed* local counsel present at a hearing, it is a requirement of LR 83.1(e): "[t]he associated attorney shall at all times meaningfully participate in the preparation and trial of the case with the **authority** and **responsibility** to act as attorney of record for all purposes." (emphasis in original). There can be no question that ASI's position is directly contradicted by the Court's Local Rules, and its arguments should be rejected accordingly.

Tellingly, ASI fails to inform the Court that the same number of its attorneys attended the hearing. Mr. Blecher, the attorney arguing the motion for ASI, appeared by phone and was accompanied by Ms. Palko who also appeared by phone from his office. Mr. Rohlfing, like Mr. Mansfield, attended the hearing in person. There is no difference in the way either party handled this hearing, yet ASI would have this Court believe that the NCAA's costs are unreasonably duplicative. "But

there is one particularly good indicator of how much time is necessary … and that is how much time the other side's lawyers spent." <u>Democratic Party of Washington State</u>, 388 F.3d at 1287.

ASI also asserts that on occasion time entries for Mr. Mansfield and Ms. Kaur are "nearly identical to one another." ASI Oppn at 7. ASI then points to certain entries in Mr. Mansfield's time. However, ASI's assertion is confounding -- On April 3, 2006 both Mr. Mansfield and Ms. Kaur billed time for reviewing the motion to bifurcate trial filed by ASI. Both counsel are under obligation to stay apprised of the developments in the case and both were reasonable in reading and analyzing the motion filed by ASI in order to engage in constructive strategy sessions. On April 5, 2006, Mr. Mansfield had a .50 hour entry for assisting with the NCAA's opposition. This entry is not similar to any entry on Ms. Kaur's records. On April 10, 2006 surely both Mr. Mansfield and Ms. Kaur should have similar entries because they engaged in discussion and email exchange regarding strategy and timing of motions with each other. The same is true for correspondence between them on April 17, 2006 and April 26, 2006. On April 27, 2006 Mr. Mansfield and Ms. Kaur worked together to get the brief finalized from Ms. Kaur's office and transferred to Mr. Mansfield's office for electronic filing. These entries logically would, and should, be similar.

Finally, ASI's assertion that the NCAA engaged in "block billing" is misleading.  Most of the entries in the NCAA's costs and fees refer to individual tasks completed by the billing attorney.  In some instances, attorneys have billed two or more tasks to the same day.  The costs and fees provided by the NCAA are sufficiently detailed to be evaluated for reasonableness.  In addition, so called "block-billing" is not prohibited.  The Tenth Circuit has clarified its opinion in Ramos: "As the district court properly recognized, however, this court has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney records which reflect block billing."  Cadena v. The Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000).  The Ninth Circuit has never adopted a *per se* prohibition against block billing.  See, e.g., Keith v. Volpe, 833 F.2d 850, 859-60 (9th Cir. 1987) (affirming the district court's grant of fees and holding that the district court did not abuse its discretion by determining the reasonable number of hours from weekly, rather than daily, time records).

Moreover, the entries in the NCAA's revised listing of fees that may be labeled as "block billing" are not subject to the usual criticism of block billing.  Courts may find block billing problematic when the entries are for blocks of time spent on tasks unrelated to each other such that it is difficult to separate the relevancy of the tasks to the motions at hand.  The NCAA counsel's entries clearly identify the various tasks engaged in by the billing attorney for that block of time,

and while there may be multiple tasks listed, they all relate to opposing these two motions, enabling this court to make a determination of their reasonableness. Counsel for the NCAA were "not required to record in great detail how each minute of [their] time was expended." Hensley, 461 U.S. at 437, n.12. ASI does not contend that these entries are vague or incapable of being evaluated for reasonableness.

IV.   CONCLUSION

For all of the foregoing reasons, the NCAA respectfully requests that this Court allow its costs and fees per this Court's Order in the amount of $ 41,812.85 less 10% for the discount that the two law firms provide to the NCAA, for its costs and fees based on the NCAA counsel's current rates.  And, that the Court require ASI to stipulate, pursuant to the Order, that all discovery taken in this case action may be used in any subsequent proceedings between the parties.

DATED:  Honolulu, Hawaii, August 2, 2006.

WILLIAM C. McCORRISTON
KENNETH J. MANSFIELD
GREGORY L. CURTNER (*pro hac vice*)
ROBERT J. WIERENGA (*pro hac vice*)
ATLEEN KAUR (*pro hac vice*)

*Attorneys for Defendant*
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION